# CASES

# THIRD DISTRICT

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1908.

W. C. Kelley and A. W. Askins, Appellees, v. Addie P. Hanes, Appellant.

PARTNERSHIP—*when dissolution not established.* Held, from the evidence in this case, that the dissolution of the partnership in question had not been established.

Bill of interpleader. Appeal from the Circuit Court of Shelby county; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the November term, 1907. Reversed and remanded, with directions. Opinion filed June 11, 1908.

GEORGE B. RHOADS, for appellant.

W. H. WHITAKER and R. M. PEADRO, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

W. C. Kelley, appellee, filed a bill of interpleader against appellant, Addie P. Hanes, and appellee, A. W. Askins, to determine the conflicting claims of said appellant and Askins to the sum of $1,117 paid to Kelley in compromise of a claim for loss by fire under certain insurance policies on a grain elevator. Upon a hearing the chancellor found that said money belonged to Askins and a decree was entered directing Kelley to pay the same to him. To reverse that decree, Addie P. Hanes prosecutes this appeal.

(1)

In 1901 C. R. Barton and Hollis H. Price formed a partnership under the firm name of Barton-Price Co., to buy and sell hay. The principal office of the firm was in Louisville, Ky., but purchases were made at various places in Illinois and elsewhere and the hay shipped throughout the Southern States. In October 1904, the firm purchased a grain elevator in Tower Hill, Illinois, and the business of the firm at that place was conducted under the name of the Tower Hill Elevator Company. After the firm acquired the elevator at Tower Hill, Barton managed the business at that place and Price remained in charge of the business at Louisville. When the elevator was purchased it was insured in the name of Clegg & Bullington and the policies of insurance were assigned to Barton, and in January following Barton procured another policy of insurance on the property in his own name. The elevator was destroyed by fire February 12, 1905, and the insurance companies having refused payment on the policies they were delivered to W. C. Kelley, an attorney, for collection. The money involved in this proceeding is the proceeds of a compromise effected by Kelley with the insurance companies.

Appellant, Addie P. Hanes, is the mother of Hollis H. Price. In October 1904, a farm belonging to her former husband, William Price, was sold, and in part payment therefor the purchaser executed his note for $5,000 payable to Addie P. Hanes, secured by mortgage on the premises. Sometime thereafter this mortgage was assigned by Addie P. Hanes to her son, Hollis H. Price, for the purpose, as the evidence tends to show, of enabling the said Price to use the same as collateral security for the debts of the firm of Barton-Price Co., and to secure further advances of money to be used in the firm business. This mortgage was on July 21, 1905, assigned to the First National Bank of Louisville for the purposes above named, and Barton had knowledge that said bank so held said mortgage. Shortly thereafter Price and one Wells, a railroad

employe, were indicted by the federal grand jury at Louisville for allowing and accepting rebates on shipments of hay by the firm of Barton-Price Co., and Addie P. Hanes arranged for the bail required by Price, by borrowing $3,000 in Decatur and forwarding the same to Louisville. Price pleaded guilty to the indictment and was fined $1,000, the fine being paid out of the money deposited to secure his bail.

In response to the persistent appeals of Mrs. Hanes to Barton that the latter arrange in some way to pay the firm indebtedness to the First National Bank of Louisville, and thus enable her to withdraw the $5,000 mortgage which had been pledged as collateral security, Barton, on August 12, 1905, authorized one Harrison to assign the policies of insurance on the elevator, the loss under which had not then been paid, to the bank, to secure the firm indebtedness, and Harrison executed such assignment but the bank refused to accept the same, and on September 5, 1905, re-assigned the same to Harrison and the firm of Barton-Price Co. Shortly thereafter Price brought the policies to Tower Hill and put them in the safe. On October 26, 1905, Barton took the insurance policies to Findlay, Illinois, and there borrowed of appellee, A. W. Askins, $1,500, giving his note therefor payable three months after date. Written upon the face of said note appeared the following: ''This note is to be paid out of my insurance before any other claims are paid.'' The insurance policies were not assigned or delivered to Askins but were retained by Barton who thereafter returned them to W. C. Kelley.

Mrs. Hanes continued to importune Barton to give her the insurance policies so that the proceeds might be applied by her in settlement of the firm debts and in securing the release of her mortgage, and on November 14, 1905, Barton authorized Kelley to deliver the same to her. She thus obtained the policies from Kelley and retained them until January 18, 1906, when

they were returned to Kelley in pursuance of the terms of an agreement by Barton, as follows:

              "TOWER HILL, ILL., Jan. 18, 1906.
MR. W. C. KELLEY, Attorney,
      Shelbyville, Illinois.
DEAR SIR:

    This is authority to bring suit on policies on burned elevator at Tower Hill, now in possession of Addie P. Hanes, as you deem fit and advisable. This suit to be brought in the name of the party or parties named on the policy, and you as assignee of funds collected to be held on trust for Addie P. Hanes, until one note for $5,000 held on trust by the First National Bank of Louisville for Barton, Price & Co. is returned to Addie P. Hanes. If said note for $5000 is returned at a time prior to the time of the collection of the above policies Addie P. Hanes shall not be further known in the foregoing consideration.

                           C. R. BARTON."

    Kelley brought suit on the policies and on March 29, 1906, a compromise was effected with the consent of Mrs. Hanes and Barton, whereby the insurance companies paid to Kelley $1,250. When Mrs. Hanes demanded of Kelley the money in his hands, the latter refused to pay the same to her, because Askins had made a claim thereto based upon an order by Barton, as follows:

              "LAKEWOOD, ILL., March 17, 1906.
MR. W. C. KELLEY,
      Shelbyville, Ill.
DEAR SIR:

    Please pay A. W. Askins amount of my insurance above your fee which will be $1,150.00, as same is due him on note.

              Yours truly,
                           C. R. BARTON."

    At the time the suit was compromised by Kelley, there was due to the First National Bank of Louisville, the sum of $4,225.69, as collateral security for the payment of which sum the bank held the $5,000

mortgage and certain accounts, claimed to be due the firm of Barton-Price Co., amounting to $1,001.81.

Waiving all other questions raised upon this record, if it is established that the firm of Barton-Price Co. was not dissolved, as is claimed by counsel for appellee; that the business at Louisville and Tower Hill continued to be conducted as partnership business; that the elevator at Tower Hill remained the property of the firm, and that the amount due the First National Bank of Louisville was partnership indebtedness, it must be held that Mrs. Hanes is entitled to the fund in controversy and that the decree should be reversed. Counsel for appellee, Askins, insist that the firm of Barton-Price Co. was dissolved by the terms of an instrument, introduced in evidence, as follows:

"LOUISVILLE, Ky., December 5, 1904.

"This agreement of an article of dissolution made in duplicate the day and date above written by and between C. R. Barton, of the first part, and H. H. Price of the second part; witnesseth: That whereas, the first and second parties have heretofore been engaged in business in Louisville, Kentucky, under the name and style of Barton Price Company, and also in a certain business known as the Tower Hill Elevator Company at Tower Hill, Ill., now the said first and second parties hereto in consideration of one dollar to each other mutually paid and received and other valuable considerations and upon the stipulations and conditions as hereinafter set forth, have and do hereby agree that the business thus conducted by them as hereinabove referred to and the partnership as so conducted by them and between them is as of this date ended and dissolved.

"C. R. Barton agrees to and does hereby relinquish, transfer and assign to H. H. Price, all his right, claim and demand in the business heretofore conducted under the name of Barton-Price Company, at Louisville, Kentucky, being valued as follows by Barton-Price Company, at Louisville, property consisting of warehouse, located at 31st and Market Streets, office fixtures, consisting of desks and typewriters, open accounts due

and owing to the firm, all stocks on hand, all contracts in purchases and sales, all claims from the respective railroad companies due or owing and all stock stored in the city of Louisville or other cities, as well as all money at this date in Bank, and said C. R. Barton further agrees that the said H. H. Price may and is to continue to conduct the business in Louisville, Kentucky, under the name of Barton-Price Company, and in conducting said business to be authorized to use the name of Barton-Price Company in all transactions, receipts and papers, but he the said C. R. Barton is to be and is released from any and all liability therefrom after December 5, 1904, and the said H. H. Price is to be and does assume any liabilities or debts owing by Barton Price Company as of this date. The said business in general being mutually valued at Five Thousand ($5000.00) Dollars and the said H. H. Price, second party hereto, in consideration of the premises hereby agrees to and does release, transfer and assign all right, title, claim or demand he has in the business, property or effects, known as the Tower Hill Elevator Company, located at Tower Hill, Illinois, and C. R. Barton, first party, shall from this date forward, own the said business entirely and exclusively by himself and conduct it in his own name and for his own use and profit, the said business it being understood being valued at an agreed valuation of Four thousand and fifty ($4,050) dollars. C. R. Barton is to receive Five Hundred ($500) Dollars which is paid with the delivery of this paper on this date and to receive a further sum of One Thousand ($1000) dollars on December 31st, 1904, as a last and final payment in the premises. C. R. Barton is to and does assume the payment of any unpaid money due or owing on the purchase of the Tower Hill Elevator property and H. H. Price is to and does assume the payment of all liabilities due or owing at this date by Barton-Price Company.

"In testimony whereof, witness the hands of the first and second parties hereto in duplicate this December 5, 1904.

H. H. PRICE,
C. R. BARTON."

With reference to this instrument and its execution, H. H. Price testifies that some time before the fire an attempt was made to dissolve the firm by mutual agreement; that Barton wrote to him for terms of dissolution which would be satisfactory to him and that in response to said request he had the paper prepared in duplicate, and after signing the same he sent it to Barton to be signed and returned to him (Price) if satisfactory; that Barton was not satisfied with the terms of the agreement, and never returned the paper to him; and that he had not seen it since he sent it to Barton until it was produced by the latter upon the hearing. Barton testifies that he signed the paper when he received it from Price and returned it to the latter immediately thereafter.

The contention of Barton that the partnership was dissolved by the terms of that instrument is contradicted by the overwhelming weight of the evidence in the record.

It is not denied that the $500 and $1,000 required by the terms of the alleged agreement to be paid by Price to Barton was never paid, and that Barton never made a demand on Price therefor. On February 12, 1905, two months after the date of the alleged contract of dissolution, Barton wrote to Price, informing him of the burning of the elevator at Tower Hill early that morning. Among other language in the letter indicating a mutual interest in the loss Barton uses the following: "We had the misfortune." "We were lucky to have no grain of note in it, our loss is going to be heavy on the building as we have only $3,300 insurance." "Don't give yourself any worry over the loss, we are up to it and will have to stand it, will have to try and make it back in some way."

November 10, 1905, Barton wrote to Price, saying in part: "It is hard to think I have worked all fall and got nothing; had hoped we might get something from there to do something here, but with the outlook

now I can't see how we can do anything more; we will lose out bad on Cairo deal.''

November 13, 1905, Barton wrote to Price as follows:

"TOWER HILL, ILLINOIS, 11/13/1905.
MR. H. H. PRICE,
　　　Louisville, Ky.
DEAR SIR:

I called Rogers this A. M. and told him to not sell things till he got my letter which I will get out to-morrow A. M. Am at a loss to write till I hear from you. Am sorry we are tied up as we are there, try and get it fixed up best you can and get all you can to do business on. Meantime you tell Ora to not talk to the people here about any part. If they come to me and say to me that you owned part of this business and we were going to run together again now they are using her to pick things for their own use now you know as well as can be as soon as this goes out our name is Dennis here so tell her to let alone any conversations on it for it will do us up sure. Now this is one of the reasons I have for wanting out for I know we will go just as that has went there. Now I am doing all I can for you but it will never do for it to be known here that we are both interested here in this matter. I know more here than I can write will tell you when you come up home but get this closed down.
　　　　　　　Yours,

　　　　　　　　　　　C. R. B.''

On April 9, 1906, Barton wrote to Price giving an itemized list of debts amounting to $7,829.86, including $1,000 paid by Price as a fine for rebating, due at the Tower Hill end of the business and saying: "What bills are due in Louisville will be to add to this amount.''

Under date of July 31, 1905, Barton wrote to Price, saying he had tried to get a loan on the policies but could not as they were sued in his name; that he was doing all he could to hold both ends going until something turned up to favor them.

In the written assignment of the insurance policies executed by Barton August 12, 1905, he describes himself as "surety and partner in the firm of Barton-Price Co.," and designates the purpose of said assignment as for "collateral real and personal and to the use of said firm."

The evidence discloses that in March and April, 1905, Barton was in Louisville working in and about the business conducted at that place, and that as late as in the spring of 1906, Price occasionally assisted in conducting the business at Tower Hill, and exercised authority to sign the firm name to checks. The conclusion is irresistible that there was in fact no dissolution of the partnership; that the indebtedness, both at Louisville and Tower Hill was the indebtedness of the partnership; and that the policies of insurance were pledged to secure the payment of a firm debt.

It is conceded that the indebtedness of Barton to Askins, evidenced by the note for $1,500, was not the indebtedness of the firm, but of Barton personally.

It is claimed on behalf of Askins that Barton executed the pledge of the insurance policies to Mrs. Hanes on January 18, 1906, under duress; that the duress consisted in the refusal of Mrs. Hanes to surrender the policies, and the necessity that Barton should acquire possession of them for the purpose of bringing suit within one year after the fire to recover the loss, as required by the terms of the policies. This contention is evidently an afterthought on the part of Barton, as the evidence does not disclose that he interposed any objection, at the time, to signing the paper.

The equities of this cause are with the appellant, Addie P. Hanes, and the decree of the Circuit Court is reversed and the cause remanded with directions to enter a decree directing Kelley to pay the money in his hands to the said Addie P. Hanes.

*Reversed and remanded with directions.*