CENTRAL NATIONAL BANK IN CHICAGO, Plaintiff-Appellee, *v.* WILLIAM B. BAIME, Defendant-Appellant.

First District (2nd Division) No. 81—525

Opinion filed November 23, 1982.—Rehearing denied March 7, 1983.

William B. Baime, of Northridge, for appellee, *pro se.*

Henry C. Krasnow and R. Peter Carey, both of Mandel, Lipton and Stevenson, Ltd., of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This action was brought by plaintiff Central National Bank in Chicago (Central) to recover on defendant's unpaid note. Defendant's answer and counterclaim were stricken and a default entered against him for failure to comply with discovery rules and rulings. Central's damages were heard by a jury which was directed to return a verdict for Central upon which judgment was entered. Defendant's post-trial motions were denied and he appeals, raising as issues the propriety of the imposed sanctions and the sufficiency of damage evidence.

For the reasons set forth below, we reverse.

The odyssey of this lawsuit through pretrial proceedings is prolix, but essential. In February 1978 Central filed its complaint alleging that: defendant, a citizen of California, executed a promissory note in favor of Central for the principal amount of $93,000, plus interest, to be repaid within 91 days; Central advanced $78,250 at defendant's direction; the amount due Central was not repaid on the date due nor

upon demand; after Central's liquidation of certain collateral, which had been applied to the amount due on the note, a $7,853.36 balance remained, plus interest. Defendant's motion to dismiss was denied on October 31, 1978.

Defendant, then represented by counsel, filed his answer on December 20, 1978, admitting that the face amount of the note has not been paid but stating, "[p]laintiff failed *** to live up to the terms of the agreement and to advance the face amount of the said note thereby breaching the terms of said agreement ***." Defendant also asserted that when executed it was understood that the note would not be called at the due date.

Central's motion for summary judgment was denied on March 2, 1979. On that same date, defendant, upon leave of court, filed a counterclaim seeking damages for Central's alleged breach of an oral agreement to loan him $93,000, for alleged conversion of Baime's securities given as collateral, and for fraud, all denied by Central.

On October 25, 1978, Central noticed defendant's deposition for December 4, 1978. He did not appear. On December 20, 1978, the circuit court ordered that defendant's deposition be concluded before February 8, 1979. On February 2, 1979, Central requested defendant's production of documents on March 9, 1979. On February 22, 1979, Central renoticed defendant's deposition to be taken March 20, 1979, and requested that certain documents be produced on that date.[1] Defendant appeared for deposition on March 20, 1979. He brought some documents with him, but did not produce certain others specifically requested, including income tax returns for Da-Mar, Inc., whose stock Baime had pledged as collateral for the subject loan, and still other documents which had been specifically requested, such as income statements from Da-Mar, documentation for brokerage houses, profit and loss sheets, and receipts for sales of personal property. Defense counsel stated that the tax returns were not relevant and would not be produced absent a court order. Defendant gave 104 pages of testimony and remained in Chicago for two additional days; however, the deposition was adjourned because of Central's scheduling problems, and in order that defendant might produce requested documents.

On June 5, 1980, Central moved to compel defendant's attendance

---

[1]Central requested production "relating to or evidencing" the allegations of certain paragraphs contained in counts I, II and III of defendant's counterclaim. Previously, Central had requested documents relating to relevant promissory notes and certain income tax returns.

at a deposition, alleging that: Baime had developed severe medical problems which had prevented him from resuming his deposition; and Baime's attorney had informed Central that he did not intend to return to Chicago prior to trial, then scheduled for June 18, 1980. The circuit court granted the motion and ordered defendant to appear for his deposition, or produce a medical affidavit excusing his appearance, by July 7, 1980. The trial was continued until September 15, 1980.

On August 22, 1980, Central moved for sanctions for defendant's failure to comply with the June 5, 1980, order. That motion was granted on August 22, 1980. Defendant's answer and counterclaim were stricken; judgment was entered for Central; Central was awarded attorney fees; and it was ordered to prove up damages, costs, interest and attorney fees.

Defendant's motion to vacate the August 22, 1980, order, asserting that defendant was available for deposition at any time in California and relating that a letter from defendant's attending physician set forth reasons for Baime's absence, was denied on September 12, 1980. On September 15, 1980, defendant's renewed motion was now supported by a medical affidavit signed by defendant's doctor which stated that: Baime was under affiant's care for arteriosclerotic heart disease; he sustained myocardial infarctions in April and again in May 1979, for which he was hospitalized; he had recurrent chest pains; and it was medically inadvisable for Baime to travel to Chicago except in midspring or late fall. The motion was granted and he was ordered to appear in Chicago at his own expense to give his deposition on October 7, 1980.

On October 7 and 8, 1980, defendant appeared for deposition and was asked to produce further documents. For the most part he produced documents previously requested. He was also asked to produce documents which opened new avenues of investigation. He refused, as noted heretofore, to produce his income tax returns.

Central moved to compel defendant to produce certain documents on October 14, 1980, and to appear in Chicago to be questioned regarding said documents. Defendant had agreed during the deposition to send the documents by October 17, but did not want to return to Chicago to testify. Central also moved for attorney fees incurred in enforcing the June 5, 1980, order. On October 29, 1980, the circuit court orally directed counsel to prepare a draft order requiring defendant: to appear at his deposition prior to November 14, 1980, for questioning regarding documents; to produce certain documents; and to produce his 1977 and 1978 Federal income tax returns *in camera* before November 7, 1980, or file an affidavit explaining his inability

to do so. The written order reflecting this October 29, 1980, ruling was not entered, however, until November 10, 1980. Trial was continued to November 24, 1980.

On November 11, 1980, defendant's attorney served a notice of motion to withdraw. On November 14, 1980, Central filed another motion for sanctions alleging that defendant had failed to comply with the October 29, 1980, order. On November 24, 1980, Central's motion for attorney fees was granted, defendant's answer and counterclaim were stricken and a default entered against him on the complaint. A hearing was scheduled for Central to prove its damages, and defendant's attorneys were allowed to withdraw.

On December 15, 1980, Central submitted proof of its damages; its motion for directed verdict in the amount of $20,889.83 was granted; and judgment for that amount was entered. Defendant's motions, filed by new counsel on January 15, 1981, to vacate the November 24, 1980, and December 15, 1980, orders, and for judgment *n.o.v.* in his favor, were denied.

■ Defendant first argues that he did not receive sufficient notice of the written order entered November 10, 1980, directing him to appear at his deposition on November 14, 1980, in violation of his due process rights. He contends that sanctions were unfairly imposed due to his failure to obey a directive four days after the written order was entered, especially in light of his ill health and California residence. He maintains further that the order required him to produce documents or file an affidavit justifying any noncompliance on his part on or before November 7, 1980, three days before the written order was entered.

No written order appears to have been entered at the October 29, 1980, hearing. On that date, the circuit judge orally directed plaintiff's counsel to prepare a draft order requiring defendant to appear for deposition prior to November 14, 1980; to produce certain documents no later than November 7, 1980; and to produce his income tax returns *in camera* by November 7, 1980, or file an affidavit explaining why he could not do so. The half-sheet entry for October 29, 1980, reads simply, "draft order to be submitted." Inexplicably, the draft order prepared by plaintiff's counsel was not signed by the circuit judge until November 10, 1980. The threshold question that arises is on what date the court's order became effective. Supreme Court Rule 271 (73 Ill. 2d R. 271) is applicable here because the circuit court ruling was "*** upon a motion other than in the course of trial, [and] the attorney for the prevailing party *** prepare[d] and present[ed] to the court *the order *** to be entered ***."* (Emphasis added.) The

uncertainty resulting from the circumstances at bar under application of Rule 271 can be resolved logically only by considering the order of November 10, 1980, as the sole effective order because it was the only order "to be entered." (73 Ill. 2d R. 271.) Compounding the apparent confusion was the action of defendant's attorney who served a notice of motion for leave to withdraw as defendant's lawyer at that point.

Much of the uncertainty and confusion is attributable to defendant's sometimes recalcitrant and uncooperative approach to the lawsuit. Discovery must be a cooperative undertaking by all parties and their counsel toward the end that the merits of the case may be expeditiously ascertained for the purpose of promoting either a fair settlement or a fair trial; it is not a game of tactical harassment or obstruction. (*Williams v. A. E. Staley Manufacturing Co.* (1981), 83 Ill. 2d 559, 416 N.E.2d 252; *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 282, 433 N.E.2d 253.) Nevertheless, defendant's appearance for deposition on March 20, 1979, and October 7 and 8, 1980, together with submission of a number of documents from time to time, over which there was no dispute, demonstrate that his deficiencies could not be characterized as a contumacious and persistent disregard for the rules or orders of court. The proceedings were also beclouded by some of the requests for discovery which were ambiguous and inexact, as well as defendant's serious illness and residence in California. This case is unlike *George William Hoffman & Co. v. Capital Services Co.* (1981), 101 Ill. App. 3d 487, 428 N.E.2d 600, in which defendant refused to take any steps in compliance with discovery requests or give any reasons for its failure to do so.

Further, the November 10 order was entered after certain of the responses by defendant were already to have taken place. Central's counsel by that time must have known that the documents and income tax returns had not been produced by November 7 as the circuit court earlier appeared to have intended, yet no accounting for that failure was made in the November 10 order for some reason, whether through some understanding of the parties or otherwise. Discovery orders must be sufficiently clear so as to enable a party to be aware of his obligations thereunder, especially in view of the extreme sanctions obtaining for violations of such orders. (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 195, 226 N.E.2d 6; *Valdivia v. Chicago & Northwestern Transportation Co.* (1980), 87 Ill. App. 3d 1123, 409 N.E.2d 457.) Exacerbating the situation here was the motion filed by defendant's attorney on the next day, November 11, 1980, seeking to withdraw as his lawyer. Within this milieu of equivo-

cacy the entry of an order striking defendant's answer and counterclaim was excessive and must be reversed.

■■ Because the cause must be remanded for further proceedings, certain contentions raised by the parties will be considered in order to provide guidance for further proceedings. Defendant claims that he was erroneously required to produce documents which could have been retrieved by Central from other sources, namely: communications between Baime and Central as trustee of a trust of which Baime was a beneficiary regarding requests for loans, which Baime claims were available in the bank's own files; and all documents relating to his living expenses during 1977 and 1978, which he claims could be found by Central on record in Baime v. Exchange National Bank, No. 79 CH 2767.[2] Defendant also objects to his having to produce income tax returns on the ground that Central did not establish their relevancy.

Defendant does not claim that the documents which allegedly could have been retrieved from another source were not in his possession as well. A party may be required to produce documents which are in the possession of third parties, where he has custody or control of those documents. (See *Franzen v. Dunbar Builders Corp.* (1971), 132 Ill. App. 2d 701, 708-09, 270 N.E.2d 118; *Hawkins v. Wiggins* (1980), 92 Ill. App. 3d 278, 415 N.E.2d 1179.) Furthermore, a party is not required to pursue each and every method of discovery. (*Hawkins v. Wiggins* (1980), 92 Ill. App. 3d 278, 283.) Here, unlike the litigants in *Franzen* and *Hawkins*, defendant was not only in constructive, but in actual possession of the documents sought. These documents, moreover, were relevant to the subject matter of the litigation. In his counterclaim Baime asserted that he had incurred damages from losses he sustained through liquidating certain assets to meet personal obligations, which became necessary when Central refused to live up to its loan agreement. The documents requested would thus serve to reveal whether he did in fact suffer those losses. Correspondence between defendant and his trustee regarding loans he requested from the trust would have been relevant as to whether defendant mitigated his damages or suffered any losses. The expense statements would reveal his expenses during that period. The income tax returns would show the amount of income he received in the years when he claimed to have

[2]Central was initially the trustee of the trust described above, but was asked to resign and Exchange National Bank of Chicago became the successor trustee. *Baime v. Exchange National Bank* was an action initiated by defendant to modify the trust provisions. This trust is not directly relevant to the issues raised here.

lost money, and the amount of gain or loss he may have incurred from alleged liquidations. Since the income tax returns were relevant, they were discoverable. Defendant placed his income in issue; he thereby waived any privilege against discovery of his income tax returns. (*Hawkins v. Wiggins; Freehill v. De Witt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52; see also *Fine Arts Distributors v. Hilton Hotel Corp.* (1980), 89 Ill. App. 3d 881, 412 N.E.2d 608.) Finally, even if Central's discovery demands were excessive, the proper remedy would have been to have sought a protective order. *Fine Arts Distributors.*

Because of our disposition of this case, it is unnecessary to address defendant's contentions that Central failed to present a *prima facie* case during the hearing on damages.

Central has filed a motion in this appeal, taken with the case, to dismiss the appeal for defendant's failure to post any security for costs pursuant to Supreme Court Rule 364 (73 Ill. 2d R. 364), alleging that defendant is not a resident of this State. This court may waive the posting of any security on appeal where an appellant appears to have a meritorious cause. (See *Lyons Brothers Lumber & Fuel Co. v. Shepherd* (1980), 81 Ill. App. 3d 213, 400 N.E.2d 975; *Petrauskas v. Kipnis* (1976), 43 Ill. App. 3d 730, 357 N.E.2d 170.) In light of the facts reviewed above and the substantive conclusions drawn therefrom, the requirement that security be posted in this case is waived. We reverse the order appealed from and remand this cause for further proceedings consistent with the views set forth herein.

Reversed and remanded.

STAMOS, P.J., and PERLIN, J., concur.