EMIL PETRIK, Plaintiff-Appellant, v. MONARCH PRINTING CORPORA-
TION, Defendant-Appellee.

First District (2nd Division)   No. 85—3604

Opinion filed November 12, 1986.—Rehearing denied January 8, 1987.

Romanyak & Miller, of Chicago (Gregory A. Stayart, of counsel), for appellant.

Freeborn & Peters, of Chicago (Leland W. Hutchinson, Jr., and Steven M. Hartmann, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff, Emil Petrik, appeals from a judgment on the pleadings rendered against him by the circuit court pursuant to section 2—615(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615(e)) on his tort claim for the intentional spoliation of evidence.

Plaintiff was discharged from his employment as vice-president--finance with defendant on April 6, 1979. He filed suit against defendant on April 3, 1981, alleging that he had been the victim of a retaliatory discharge and additionally requesting expenses and overtime pay accrued while he was an employee. In October 1981 the circuit court dismissed his complaint for failure to state a cause of action. This court reversed and remanded the dismissal order on December 21, 1982. (*Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 444 N.E.2d 588 (*Petrik I*).) The supreme court denied leave to appeal on April 23, 1983. 93 Ill. 2d 548.

After remand from this court, defendant filed a motion for summary judgment supported by affidavits and documentary evidence. The circuit court held a hearing on defendant's motion on May 1, 1984, and granted summary judgment for defendant on all but the overtime claim. On July 11, 1984, plaintiff filed this action, which the judge consolidated with plaintiff's other suit.

In the instant complaint, plaintiff alleged that he discovered a $130,000 discrepancy between the accounts receivable ledger and the accounts receivable and immediately informed Herbert C. Hansen, defendant's president and chief operating officer. Hansen asked him to find the source of this discrepancy, and in so doing plaintiff reviewed defendant's accounting code book, cash book ledger and certain cancelled checks from its corporate bank account. Plaintiff alleged that he discovered by examination of these documents that some loan payments for Hansen's purchase of defendant company had been made out of defendant's corporate funds, in direct violation of the purchase agreement. Plaintiff alleged that "[t]he findings of plaintiff suggested embezzlement of corporate funds of defendant." Plaintiff notified Hansen that officers or employees of defendant might be violating the criminal laws. In November 1978 Hansen told him not to worry because the purchase agreement had been changed on the last day of negotiations, but Hansen refused to produce a copy of the revised contract. Plaintiff alleged that he was discharged and he filed suit and that after his suit was remanded from this court, he filed a written request upon defendant to produce defendant's cash book for the period July 1978 through March 1979 and the cost codes used dur-

ing the same period. Plaintiff further alleged that defendant knew that the evidence was "critical, material and highly relevant" to his pending civil action. Plaintiff alleged:

"[D]efendant willfully, wrongfully and intentionally and with conscious disregard of the probable serious harm to plaintiff, and with malice and reckless indifference for the injurious consequences of its acts, concealed, lost, destroyed, or otherwise disposed of the physical evidence after this lawsuit was filed and after plaintiff's request for the physical evidence, the exact date being unknown to plaintiff but known to defendant.

\*\*\* [D]efendant acted with conscious disregard and with reckless indifference of the probable injurious consequences of its acts by disregarding and ignoring information provided to it by plaintiff which caused defendant to know, or in the exercise of reasonable care should have caused them to know, that the physical evidence was critical, material, and highly relevant evidence in plaintiff's civil actions. Defendant's failure to heed this information (see Paragraphs 13—17 [which detail plaintiff's discovery of the alleged discrepancy]) proximately caused the destruction, concealment, loss or other disposition of the physical evidence.

30. By reason of the foregoing willful, wrongful, intentional, conscious and reckless acts of defendant, plaintiff has been injured in that plaintiff's opportunity to obtain compensation for alleged retaliatory discharge by establishing proof of embezzlement has been significantly prejudiced."

On August 27, 1984, defendant filed an answer to the present complaint. In its answer, defendant denied that there was any embezzlement or that defendant informed Hansen of any wrongdoing. In addition, defendant denied the allegations, quoted above, that it knew the physical evidence was critical but destroyed it in conscious disregard of or reckless indifference to the consequences of its action. Defendant further denied that plaintiff was injured in his opportunity to obtain compensation for the alleged retaliatory discharge by its prejudicing his ability to prove embezzlement. Defendant also denied plaintiff's allegations of damages.

On September 5, 1985, defendant moved for judgment on the pleadings under the Code of Civil Procedure, section 2—615(e) (Ill. Rev. Stat. 1985, ch. 110, par. 2—615(e)), asserting that the complaint was legally insufficient and failed to state a cause of action because no Illinois statute or judicial decision had recognized any cause of action for tortious interference with pending civil action by spoliation

of evidence.

After hearing oral arguments on defendant's motion, the trial court ruled: "In the absence of the sanction remedy under 219—C and the holding in *Ralston v. Casanova* [(1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444], I would be highly inclined to recognize this cause of action. Litigants ought to be vigorously discouraged and punished for secreting evidence, but there simply is no reason here to recognize a separate cause of action." The judge's written order states that it is final and appealable, and a separate order was entered severing this case from plaintiff's other suit. Plaintiff filed a timely notice of appeal.

Before plaintiff filed the present suit for spoliation of evidence, the circuit court granted summary judgment against plaintiff on his retaliatory-discharge claim, which was on remand from this court. The court withheld decision on the overtime claim, however. On June 3, 1984, the circuit court denied plaintiff's motion to vacate summary judgment and certified its judgment on the retaliatory discharge for appeal. This court affirmed summary judgment for defendants on plaintiff's retaliatory-discharge claim by opinion issued April 22, 1986. *Petrik v. Monarch Printing Corp.* (1986), 143 Ill. App. 3d 1, 493 N.E.2d 616 (*Petrik II*).

I

Courts in three States, including this court, have considered appeals based on claims for the spoliation of evidence. The leading case is *Smith v. Superior Court* (1984), 151 Cal. App. 3d 491, 198 Cal. Rptr. 829, in which the plaintiff alleged that she was driving down the highway when the left rear wheel and tire flew off of the van in front of her and smashed her windshield, causing permanent blindness. She alleged that, after the accident, the dealer that had customized the van towed it to its garage for repairs. The dealer agreed with plaintiff's counsel to maintain certain auto parts pending further investigation. The complaint alleged that thereafter the dealer "lost, destroyed or otherwise disposed of the physical evidence which they had promised to maintain for Plaintiffs." (151 Cal. App. 3d 491, 495, 198 Cal. Rptr. 829, 832.) The eighth count of the second amended complaint against the dealer contained a cause of action entitled "Tortious Interference with Prospective Civil Action by Spoliation of Evidence." The trial court sustained the dealer's demurrer to this count, ruling that such an intentional tort did not exist. The California Court of Appeals reversed.

The appeals court concluded that a recent California Supreme

Court case, *Williams v. State of California* (1983), 34 Cal. 3d 18, 664 P.2d 137, 192 Cal. Rptr. 233, indicated that such a cause of action could be stated in negligence, provided the defendant owed a duty. In *Williams* the plaintiff had been injured when a piece of brake drum from another truck flew into her windshield. The plaintiff filed suit against the State, alleging that the highway patrolmen who came to her aid negligently and carelessly investigated the accident and failed to pursue the offending truck, so as to "virtually destroy" plaintiff's opportunity to obtain compensation for her severe injuries. (34 Cal. 3d 18, 21-22, 664 P.2d 137, 138, 192 Cal. Rptr. 233, 234.) The California high court ruled that the highway patrol had a right, but not a duty to investigate accidents and aid stranded motorists. The court stated, "There are no allegations that the officers assured her *** that they would do any of the acts she faults them for not doing, *** [or] that they conducted themselves in such a manner as to warrant reliance *** nor, finally, is there any hint that they prevented plaintiff from conducting an investigation of her own." The court held that plaintiff had not stated a cause of action. Nonetheless, the court concluded that because the trial court had dismissed her claim on immunity grounds she should be given leave to amend her complaint in the trial court. The California appeals court in *Smith* noted that the supreme court "granted Williams leave to amend her complaint, implying that if she were able to allege a duty, she might be able to state a cause of action for failure to preserve evidence for civil litigation." *Smith v. Superior Court* (1984), 151 Cal. App. 3d 491, 497, 198 Cal. Rptr. 829, 833.

An earlier California case had rejected claims of "evidence concealment" against a medical association because there must be an end to litigation and collateral attacks on judgments were impermissible. The *Smith* court stated: "However, [the] situation in the instant case is vastly different procedurally. The Smiths' case has not yet gone to trial, and therefore, no collateral estoppel issue exists." *Smith v. Superior Court* (1984), 151 Cal. App. 3d 491, 498, 198 Cal. Rptr. 829, 834.

Finally, the court noted that the most troubling aspect of allowing a cause of action for intentional spoliation of evidence is the element of damages. The plaintiff's products liability case had not yet gone to trial and perhaps she could meet her burden of proof by other means. The court concluded that although the amount of damages must usually be established with reasonable certainty, if the nature or circumstances of the claim or defendant's wrongdoing make that impossible, such certainty is not required. For future

earnings, or in patent or trademark infringement, libel or slander actions, substantial damages are awarded without any proof of harm or even emotional distress. Deterrence was an important policy, the court noted, and to deny recovery of actual damages because of uncertainty would enable parties to profit from their own wrongdoing. In the analogous case of *Gold v. Los Angeles Democratic League* (1975), 49 Cal. App. 3d 365, 375, 122 Cal. Rptr. 732, 739, the unsuccessful Democratic candidate for county comptroller stated a cause of action for interference with prospective employment against the "Democratic League," which had mailed a pamphlet conveying the false impression that it was affiliated with the Democratic Party and that another candidate had the party endorsement. The court held that defendants had interfered with his *opportunity* to be elected to office. The *Smith* court stated:

"[W]e conclude that a prospective civil action in a product liability case is a valuable 'probable expectancy' that the court must protect from the kind of interference alleged herein. \*\*\* [Defendant] allegedly intentionally interfered with the Smiths' *opportunity* to win their suit. The plaintiff in *Gold* was not required to allege at the pleading stage that he would have won the election but for the defendant's interference, but rather that the defendant had intentionally interfered with his opportunity for a prospective advantage. We see little difference in [defendant's] alleged interference with the Smiths' prospective advantage, i.e., proving their product liability suit.

Further, we are cognizant of all the obvious and sound practical reasons for allowing the Smiths' cause of action for intentional spoliation of evidence to be heard at the same time as their cause of action for personal injury—needless duplication of effort, two trials involving much the same evidence, time and expense imposed on litigants and the judicial system, and a jury uniquely equipped to determine how the Smiths were harmed.

## CONCLUSION

Public policy dictates that the Smiths' interests in their prospective civil litigation are entitled to legal protection against [defendant's] alleged intentional spoliation of evidence, even though their damages cannot be stated with certainty." (Emphasis in original.) *Smith v. Superior Court* (1984), 151 Cal. App. 3d 491, 502-03, 198 Cal. Rptr. 829, 837.

After the decision in *Smith v. Superior Court* (1984), 151 Cal.

App. 3d 491, 198 Cal. Rptr. 829, two other California cases have considered the spoliation tort. In *Velasco v. Commercial Building Maintenance Co.* (1985), 169 Cal. App. 3d 874, 215 Cal. Rptr. 504, the plaintiffs sued a building owner whose janitor allegedly disposed of evidence. Plaintiffs' attorney had left exploded bottle fragments in a paper bag on the top of his desk. The court held that absent markings or any other designation on the bag, it was reasonable for a maintenance person seeing a bag containing a broken bottle to throw it away and that plaintiffs failed to state a claim for intentional spoliation of evidence. The court noted that in *Smith* the plaintiffs had exacted a promise to preserve the evidence from defendants, while no important policy would be served by finding a duty for maintenance workers to refrain from throwing away what appears to be trash simply because it is in an attorney's office.

Similarly, in *Reid v. State Farm Mutual Automobile Insurance Co.* (1985), 173 Cal. App. 3d 557, 218 Cal. Rptr. 913, the plaintiff was injured when the automobile insured by defendant collided with a guard rail. The car was a total loss and plaintiff, the driver, sustained serious injuries. The defendant insurance company paid the owner full value of the car in exchange for transfer of title and allowed the car to be cut up for parts. Subsequently, the plaintiff filed negligence and products liability suits against the manufacturer, distributor and repairer of the car. The court affirmed a grant of summary judgment on plaintiff's subsequent spoliation action against the insurance company. The court held *Smith* to be inapplicable because the insurance company never promised to preserve the car or investigate the causes of the accident.

Before *Smith*, this court, in *Fox v. Cohen* (1980), 84 Ill. App. 3d 744, 406 N.E.2d 178, considered an appeal from the dismissal of a complaint filed by the administrator of the estate of a former patient, which alleged that a hospital negligently lost or destroyed EKG tracings and reports relating to the patient. The patient had died, and this claim was joined with a medical malpractice-wrongful-death suit. Plaintiff also alleged a conspiracy to hide the records. This court indicated that to plead such a cause of action a plaintiff must allege a duty owed by defendant, breach of the duty, and an injury proximately resulting from the breach. This court then reviewed rules promulgated by the Illinois Department of Public Health and recommendations by the American and Illinois Hospital Associations and concluded that a hospital owes a duty to its patients to use reasonable care in maintaining medical records. (84 Ill. App. 3d 744, 751, 406 N.E.2d 178, 182.) This court, however, added:

"The existence of a legal duty fulfills only one of the elements necessary for stating a valid cause of action in negligence. Another necessary element is that an injury proximately occurred from a breach of that duty. The injury must be actual; the threat of future harm not yet realized is not enough. Prosser, Torts, sec. 30, at 143 (4th ed. 1971).

Counts II and III allege that the hospital's breach of its duty caused plaintiff to lose her malpractice action against the defendant doctor as alleged in Count I of the complaint. However, plaintiff has not yet sustained any injury. The medical malpractice claim under count I is still pending. Plaintiff's theory of recovery in counts II and III is based upon the notion that she will sometime in the future lose her malpractice action because of the absence of an EKG tracing. Such a notion at this point in time is contingent on the unheard proof and result in the malpractice action. That plaintiff will lose her malpractice action because of a missing EKG is, as of now, purely speculative and uncertain. Liability cannot be predicted upon surmise or conjecture as to the cause of the injury. (*Driscoll v. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 219 N.E.2d 483.) Plaintiff's action under counts II and III is premature." (*Fox v. Cohen* (1980), 84 Ill. App. 3d 744, 751, 406 N.E.2d 178, 183.)

This court affirmed the trial court's dismissal of the loss-or-destruction-of-evidence claims. Thus, unlike the *Smith* court, which was concerned about conservation of judicial resources and wary of a collateral attack on a judgment based on the missing evidence, this court focused on necessity of injury and ruled that a spoliation claim could not be brought until after the underlying lawsuit was lost.

In *Bondu v. Gurvich* (Fla. App. 1984), 473 So. 2d 1307, the plaintiff similarly alleged that her husband died during the course of a triple-bypass operation and that anesthesiology records had been made but were nowhere to be found, and that because there was no record of what occurred, summary judgment was entered against her in a medical malpractice wrongful-death claim. The court held that plaintiff stated a claim against the hospital for its negligent loss of records. Citing Florida administrative regulations and this court's decision in *Fox v. Cohen*, the court held that there was a duty to keep and maintain medical records. The court added:

"We need not, in Professor Prosser's words, strike out boldly to recognize [plaintiff's cause of action.] Courts before us have recognized the existence of causes of action for negli-

gent failure to preserve evidence for civil litigation, *Williams v. California*, 34 Cal. 3d 18, 192 Cal. Rptr. 233, 664 P.2d 137 (1983), and for intentional interference with prospective civil action by spoliation of evidence, *Smith v. Superior Court*, 151 Cal. App. 3d 491, 198 Cal. Rptr. 829 (1984). If, as in *Williams* and *Smith*, an action for failure to preserve evidence or destruction of evidence lies against a party who has no connection to the lost prospective litigation, then, a fortiori, an action should lie against a defendant which, as here, stands to benefit by the fact that the prospect of successful litigation against it has disappeared along with the crucial evidence." (473 So. 2d 1307, 1312.)

On rehearing, one of the original panel members dissented from the majority's holding. He stated that a tort for failure to provide medical records that "results" in a loss of the underlying malpractice action should not be recognized:

"In my view, such a rule runs counter to the basic principle that there is *no* cognizable independent action for perjury, or for any improper conduct even by a witness, much less by a party, in an existing lawsuit. E.g. *Kessler v. Townsley*, 132 Fla. 744, 182 So. 232 (1938). Were the rule otherwise, every case would be subject to constant retrials in the guide of independent actions. Thus, what the court characterizes at page seven of its opinion as an "a fortiori" situation is instead a complete non-sequitur." (Emphasis in original.) 473 So. 2d 1307, 1314 (Schwartz, C.J., dissenting in part).

Finally, in *Spano v. McAvoy* (N.D. N.Y. 1984), 589 F. Supp. 423, the plaintiff filed suit against the sheriff's department over the destruction of a tape recording of radio communications after his son was killed in a high speed chase. The plaintiff alleged that he would be unable to prove his wrongful-death action against the sheriff because such crucial evidence was missing. However, the tape was destroyed before he filed any wrongful-death action against the sheriff's department, and there was no indication that he requested that the department preserve the tape before the 35-day period in which it routinely erased tapes. The district court held that plaintiff had no liberty or property interest in the recordings and he thus failed to state a claim under the due process clause. See also *Quinones v. United States* (3d Cir. 1974), 492 F.2d 1269, in which the court held that plaintiff stated a cause of action against the government under Pennsylvania law for breach of duty to use due care in maintaining accurate employment records.

II

■■ ■ The present case comes to this court after judgment on the pleadings. A motion for judgment on the pleadings does not envision review of material beyond the face of the pleadings themselves, and the sole issue raised by the motion is whether plaintiff's complaint, when read in light of defendant's answer, raises material questions of fact as to the existence of a cause of action. (*Abrams v. Illinois College of Podiatric Medicine* (1979), 77 Ill. App. 3d 471, 395 N.E.2d 1061.) Such a motion does not invite consideration of other material in the record (*Baillon v. S.S. Kresge Co.* (1972), 4 Ill. App. 3d 82, 277 N.E.2d 719), although attachments to the pleadings are considered part of the pleadings (*Illinois Bell Telephone Co. v. Dynaweld, Inc.* (1979), 70 Ill. App. 3d 387, 388 N.E.2d 157). Thus, this court would ordinarily consider only the complaint and attachments thereto and defendant's answer and motion for judgment. Moreover there is a division of authority over whether this court can judicially notice the judgment and record of the related earlier appeal. (Compare *Lee v. Finley* (1953), 413 Ill. 445, 109 N.E.2d 772; *Blyman v. Shelby Loan & Trust Co.* (1943), 382 Ill. 415, 47 N.E.2d 706; *Filrep, S.A. v. Barry* (1980), 88 Ill. App. 3d 935, 410 N.E.2d 1137; and *Masters v. Central Illinois Electric & Gas Co.* (1957), 15 Ill. App. 2d 95, 145 N.E.2d 269 (court would judicially notice record on a former appeal) with *People ex rel. McCallister v. Keokuk & Hamilton Bridge Co.* (1921), 295 Ill. 176, 129 N.E. 87, *error dismissed* (1921), 258 U.S. 613, 66 L. Ed. 790, 42 S. Ct. 462; *Citizens Savings & Loan Association v. Knight* (1966), 74 Ill. App. 2d 234, 219 N.E.2d 355; and *In re Estate of Fornof* (1968), 96 Ill. App. 2d 260, 238 N.E.2d 240 (court would not judicially notice record in other proceedings).) As noted above, this court recently affirmed the dismissal of plaintiff's retaliatory-discharge suit, and, in order to proceed with this appeal, we will take judicial notice of this fact.

When plaintiff filed his spoliation claim, his retaliatory-discharge claim was still pending in the trial court (after remand), and when judgment was entered on the spoliation suit, plaintiff's retaliatory-discharge claim was still on appeal. Therefore, under *Fox v. Cohen* (1980), 84 Ill. App. 3d 744, 406 N.E.2d 178, the circuit court could have properly dismissed the spoliation suit on the ground that it was premature because plaintiff had not yet clearly suffered an injury. Absent an unfavorable termination of plaintiff's retaliatory-discharge suit, including exhaustion of all remedies on appeal, we would be compelled to affirm the trial court's dismissal of the retaliatory-discharge suit. However, having taken judicial notice of the affirmance

of the adverse judgment in *Petrik II* to keep this appeal alive, we must also, in fairness to defendant, notice the basis for that affirmance as well.

■■ There are several important considerations that underpin any decision by this court to recognize a tort for spoliation of evidence. One question to be asked, in light of *Fox* and the other cases discussed above, is whether defendants owed plaintiff a duty to preserve the 1978 ledger books and check codes. Plaintiff alleges that when the evidence was destroyed he had already filed his initial suit in which he charged that he uncovered embezzlement during 1978. Although the discharge suit might have been dismissed at the time the evidence was allegedly destroyed, a judgment is not conclusive until all appeals have been exhausted (*Relph v. Board of Education* (1981), 84 Ill. 2d 436, 442-45, 420 N.E.2d 147, 149-51), and there was a possibility that the appellate court or supreme court would reverse and reinstate the action, as this court in fact did.

One possible source of a duty would be our supreme court rules on discovery in civil cases. The discovery rules apply to any matter that is relevant to *pending* litigation. (87 Ill. 2d R. 201(b)(1).) Thus, any duty stemming from these rules would arise upon the filing of a lawsuit. Plaintiff alleged that the evidence was destroyed sometime after his retaliatory discharge suit was filed and this allegation must be taken as true. (*Phillips Construction Co. v. Muscarello* (1976), 42 Ill. App. 3d 151, 355 N.E.2d 567.) Supreme Court Rule 201 makes clear that a person is entitled to ask about the existence of evidence, and it allows discovery of the location of documents or tangible things, presumably to permit the party seeking disclosure to examine such evidence. It would be inconsistent to require a person to disclose the location of an object so that it may be inspected, yet allow the same person to freely destroy the object beforehand. This rule authorizes a party to obtain *full disclosure* regarding *any matter* relevant to pending litigation; destruction of evidence prevents such disclosure and means that relevant evidence will not be available at trial.

In addition, Supreme Court Rule 214 allows discovery of evidence in the possession or control or a *party* to the suit. (See *Central National Bank v. Baime* (1982), 112 Ill. App. 3d 664, 445 N.E.2d 1179.) Once again, Rule 214 does not explicitly prohibit the destruction of evidence, but it manifests an intent to have documents and physical objects available so that they can be examined or tested by the other party. If one party destroys evidence it obviously nullifies the purpose of the rule.

Finally, Supreme Court Rule 219(a) authorizes assessment against a party who fails to produce documents or tangible things of an award of expenses and attorney fees incurred in seeking an order to compel production. Rule 219(c) also provides for sanctions for refusals to comply with the discovery rules (including Rule 214 requests for production) or for failure to comply with a court order. The sanctions include, but are not limited to: staying the proceedings; debarring the offending party from maintaining a claim or defense, or from filing a pleading that pertains to any issue to which the refusal or failure relates; barring testimony; striking pleadings; and entering default judgment against the offending party or dismissing his or her action. 103 Ill. 2d R. 219(c).

■ The availability of sanctions for the refusal to comply with discovery rules, or failure to obey a court order, demonstrates that the rules are not simply aspirational. Sanctions make enforceable a party's right to view existing evidence. It would be a large loophole, indeed, if the other party could avoid the effect of the rules simply by ending the existence of the demonstrative or documentary evidence. This State's system of civil litigation is founded in large part on a litigant's ability, under the authority of the supreme court rules, to investigate and uncover evidence after filing suit. Destruction of evidence known to be relevant to pending litigation violates the spirit of liberal discovery. Intentional destruction of evidence manifests a shocking disregard for orderly judicial procedures and offends traditional notions of fair play. Of course, absent a discovery request, the other party might not be aware of which items in its possession the other side considered to be evidence. Any duty to preserve such items would undoubtedly be tempered by what a reasonable person would expect to be sought as evidence. Moreover, plaintiff here alleged more than simple negligence, but charged that defendant destroyed records in "conscious disregard" for their utility in plaintiff's case.

Finding the existence of a duty would not end any inquiry into the feasibility of recognizing a spoliation-of-evidence tort. Defendant argues that we should apply the factors set out in *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 388, 432 N.E.2d 849, 853, for finding that an implied right of action for damages arises under statute. (See also *Cook v. Optimum/Ideal Managers* (1985), 130 Ill. App. 3d 180, 185, 473 N.E.2d 334, 338.) Among the questions asked is whether further redress is needed in light of existing remedies. In *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444, the plaintiff brought a strict liability action

against automobile and seat-belt manufacturers. The trial court barred plaintiff from presenting any testimony regarding the condition of the seat belt as a discovery sanction for his expert's disassembly and testing of the seat belt without notifying defendants, as was required by protective order. Another expert testified that the validity of any subsequent test would be questionable. The appellate court held that the trial court did not abuse its discretion in ordering such a discovery sanction and that summary judgment against plaintiff was proper because the only evidence plaintiff presented in opposition, in light of the bar order, was his own testimony that he wore the seat belt while injured.

Plaintiff argues that the possibility of such discovery sanctions should not preclude recognition of a separate tort action. First, he points out that the law is filled with examples of alternative remedies for the same wrong that sound in tort, contract, and equity and which can be brought in State and Federal courts as well as administrative agencies. He cites a discriminatory discharge as one example of a wrong with overlapping remedies. Second, plaintiff contends that reliance on discovery sanctions alone precludes the possibility of a jury trial and the possibility of punitive damages. Moreover, sanctions, including default against the other party on the issue to which the missing evidence relates, rest in the sound discretion of the trial court and will not be disturbed on review absent a clear abuse of discretion. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1056, 473 N.E.2d 444.) Plaintiff points out that there are few reported cases in which a litigant has been dealt with harshly for abusing the rules. A spoliation tort, on the other hand, would entitle plaintiff to relief whenever the elements of the tort have been proved. He argues that recognizing a cause of action in tort will send a clear message to Illinois litigants not to suppress or destroy relevant evidence.

The most difficult aspect of a spoliation-of-evidence tort is the calculation of damages. In *Smith v. Superior Court* (1984), 151 Cal. App. 3d 491, 198 Cal. Rptr. 829, the court stated that what plaintiffs lost, and what they were to be compensated for, was an "expectancy"—the value of the opportunity to win their suit. One possible measure of damages, therefore, could be the damages that would have been obtained in the underlying lawsuit, multiplied by the probability that plaintiff would have won the suit had he had the spoliated evidence. On the other hand, it is impossible to know what the destroyed evidence would have shown. There are many different ways to prove a claim, and under the best of circumstances it is dif-

ficult to predict the likelihood of winning a lawsuit. It would seem to be sheer guesswork, even presuming that the destroyed evidence went against the spoliator, to calculate what it would have contributed to the plaintiff's success on the merits of the underlying lawsuit. Given that plaintiff has lost the lawsuit without the spoliated evidence, it does not follow that he would have won it with the evidence. The lost evidence may have concerned a relevant but relatively trivial matter. If evidence would not have helped to established plaintiff's case, an award of damages for its destruction would work a windfall for the plaintiff.

It would probably be unwise to hold that a cause of action exists where there is no conceivable remedy. Assuming that it is impossible to know what the spoliated evidence would have shown, perhaps the plaintiff should be awarded the full measure of damages that he would have obtained had he won the underlying lawsuit. In *La Rocco v. Bakwin* (1982), 108 Ill. App. 3d 723, 439 N.E.2d 537, the court reversed the grant of summary judgment on a claim of tortious interference in an oral lifetime contract and prospective economic advantage. Although the contract was terminable at will, and therefore the plaintiff's economic benefits could have been cut off at any time, the court concluded that there was a sufficient basis for the case to go to trial.

Although it is true that the plaintiff in a spoliation case would reap a windfall if the underlying suit had no merit, perhaps the intentional destroyer of evidence should bear that risk. Plaintiffs alleged that defendants acted consciously or maliciously or at least in conscious disregard of the possible harm caused by the destruction of evidence. In *Bigelow v. RKO Radio Pictures* (1946), 327 U.S. 251, 90 L. Ed. 652, 66 S. Ct. 574, the United States Supreme Court stated that when a defendant's tortious conduct precludes precise calculation of the amount of damages:

"the jury may make a just and reasonable estimate of damage based on relevant data ***. *** Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain. Failure to apply it would mean the more grievous the wrong done, the less likelihood there would be of a recovery.

The most elementary conceptions of justice and public policy require the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." 327 U.S. 251, 264-65, 90

L. Ed. 652, 660, 66 S. Ct. 574, 579-80.

Another possible measure of damages could be the costs and attorney fees incurred in the prior suit in which the evidence was spoliated. However, attorney fees cannot usually be awarded absent an agreement or statute authorizing them. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 166, 390 N.E.2d 859, 865.) Moreover, separate actions are not generally allowed to recover the costs and fees of prior suits. See *Ritter v. Ritter* (1943), 381 Ill. 549, 46 N.E.2d 41; *Weimer v. Havana National Bank* (1978), 67 Ill. App. 3d 882, 385 N.E.2d 340.

■ We conclude that we need not resolve these important questions, or decide whether Illinois law would recognize a spoliation tort, because the lack of an indispensable element of the tort is fatal to plaintiff's claim. As noted above, this court in *Fox v. Cohen* (1980), 84 Ill. App. 3d 744, 406 N.E.2d 178, made clear that a plaintiff could not state such a claim without showing actual injury proximately resulting from the loss or destruction of the lacking evidence. In *Fox* the underlying malpractice suit had not terminated in a final judgment against the plaintiff; consequently she could not show that she was injured because of a lack of relevant evidence. In the present case, in contrast, the underlying retaliatory-discharge suit has terminated in a final judgment unfavorable to plaintiff, this court has affirmed that judgment, and plaintiff has not obtained leave to appeal to the supreme court. However, although plaintiff's retaliatory-discharge suit was clearly unsuccessful, plaintiff has still failed to adequately plead a nexus between the failure of his suit and the destruction of the ledger books and other records in 1978. In fact, the absence of that connection is clear. In the present suit, plaintiff has alleged that defendant wilfully and wrongfully destroyed physical evidence while his retaliatory-discharge suit was pending, significantly prejudicing his opportunity to obtain compensation for retaliatory discharge by establishing proof of embezzlement. Plaintiff did not allege which company official was supposed to have been involved in the embezzlement that plaintiff claims to have uncovered. Indeed, coming from one who claims to have actually seen the documents that were allegedly destroyed and concluded that they provided convincing evidence of a crime, plaintiff's complaint is devoid of any details to indicate that plaintiff's suspicions of embezzlement had any foundation at all.

In *Petrik II* we noted that after our remand of *Petrik I*, defendant made a motion for summary judgment and filed, among other things, an affidavit by the president and majority shareholder of

defendant stating that he had never used corporate funds to satisfy any personal debts. In addition, a former partner of the accounting firm that audited Monarch in the fiscal years 1978, 1979, and 1980 indicated that no evidence of corporate payments was uncovered. We noted:

> "The circuit court held a hearing on defendant's motion [for summary judgment] on May 1, 1984. *Plaintiff's counsel conceded that he had no evidence of embezzlement.* Further, plaintiff admitted in a deposition that the $130,000 discrepancy that he had alleged in his complaint was actually due to missing documentation for items otherwise recorded in the company's ledger, and apparently most of this documentation has now been pieced together. *Plaintiff's counsel also admitted that he was not asserting any tax or securities law violations on the part of defendant's owners or officials.*" (Emphasis added.) (*Petrik v. Monarch Printing Corp.* (1986), 143 Ill. App. 1, 3, 493 N.E.2d 616, 618.)

In his underlying retaliatory-discharge suit against defendants, plaintiff did not ask for sanctions or even that an adverse inference be drawn against defendants because of the destruction of evidence. (See 103 Ill. 2d R. 219.) Rather, plaintiff abandoned his embezzlement theory altogether in presenting his retaliatory-discharge claim (*Petrik v. Monarch Printing Corp.* (1986), 143 Ill. App. 3d 1, 4, 493 N.E.2d 616, 619) and admitted that he had "no evidence" of criminal law violations (143 Ill. App. 3d 1, 5, 493 N.E.2d 616, 620). Thus, it simply cannot be said that the destruction of the ledgers and other documents charged in the instant action proximately caused plaintiff's loss of his retaliatory-discharge claim based on alleged embezzlement. Rather, it was plaintiff's failure to present any evidence to support his claim or to explain his lack of evidence that caused affirmance of the adverse judgment in *Petrik II.* Dismissal of plaintiff's retaliatory-discharge suit was caused, in the first instance, by plaintiff's abandonment of that theory of the case, rather than defendant's destruction of any documents that might support that theory. We in no way condone what was at best an irresponsible action by defendant in destroying what may clearly have been relevant evidence in a case pending on appeal, even if done, as defendant claims, during the course of a "routine" document-retention program. On the other hand, to ignore the fact that plaintiff failed to indicate to the trial court that these documents were not produced as requested, or to ask for sanctions against defendant or for an inference that such documents would establish embezzlement as plain-

tiff had claimed, would encourage those hoping to bring spoliation claims to treat the first suit as a "dry run" and generate only half-hearted efforts in their prosecution.

In *Fox v. Cohen* (1980), 84 Ill. App. 3d 744, 406 N.E.2d 178, we held that a plaintiff must show an injury to obtain recovery, at the very least by showing that he or she lost the underlying suit in which the evidence would have been used. We recognize that it would be too heavy a burden on a plaintiff to show that he or she would have won with the missing evidence. Such a showing would be nearly impossible because judges or juries cannot evaluate the value of evidence that they cannot see. We simply hold that judgment for defendant was proper here where dismissal of the underlying claim resulted from the plaintiff's abandonment of the very theory of liability that the destroyed evidence would have supported.

The decision of the circuit court is affirmed.

Affirmed.

BILANDIC, P.J., and STAMOS, J., concur.