The plaintiffs, Donald Christian and his wife Susan Christian, Michael Mitchell and his wife Andrea Mitchell, Donald Hellen and his wife Darlene Hellen, and Mark Johannes and his wife Candice Johannes, appeal from summary judgments entered in favor of the defendants Kenneth Chandler and Lee Chandler, Chandler Construction Company, Inc., and State Auto Mutual Insurance Company ("State Auto") on the plaintiffs' claims alleging negligence, wantonness, and "spoliation of evidence." We affirm.
 I.
The plaintiffs were social guests at a baby shower hosted by Kenneth and Lee Chandler, husband and wife, at their residence on Treeline Drive in Huntsville on June 13, 1992. The Chandlers had purchased the house from Lewis and Katherine Loftis in August 1990, and on the same day they sold this house to the Chandlers, the Loftises signed a contract with Chandler Construction for the construction of a new house. Chandler Construction is owned and operated by Kenneth Chandler. The Chandlers then rented the Treeline Drive residence to the Loftises until the construction of the Loftises' new house was complete. The Chandlers eventually moved into the Treeline Drive residence in August 1991, but put it up for sale shortly thereafter.
In April 1992, Perry and Vickie Vanderford made an offer on the property, subject to its passing an inspection by a professional home inspector. During the inspection of the exterior wooden deck attached to the house, the home inspector noted the presence of small spots of soft and rotting wood on a handrail and two floor boards, and he said he believed the handrail and those floor boards should be replaced. The inspector conveyed the results of his home inspection to the Vanderfords in a written report and orally in a meeting at which Kenneth Chandler was present at least part of the time. Following receipt of the inspection report and their own tour of the house and deck, the Vanderfords did not request the Chandlers to make any repairs to the deck before they purchased the residence; they did request that the roof on the house be repaired, as the inspector had suggested they require.
During the evening of June 13, 1992, the guests at the baby shower mingled and moved between the interior of the Treeline Drive residence and the wooden deck, where refreshments were located. The deck was raised at least 20 feet above ground. Shortly after 9:00 p.m. that evening, while approximately 20 guests were standing on the deck, it suddenly collapsed. Many of the guests were severely injured as a result of their fall.
Early the next morning, Kenneth Chandler telephoned his family attorney and then his insurance agent, James Thornton. Thornton was employed by the J. Smith Lanier Insurance Agency, a representative for State Auto. Chandler informed the agent of the collapsed deck and resulting injuries to his guests. Thornton told Chandler that he could clean up the area, but did not tell him to remove the debris. Thornton also instructed him to take photographs of the scene and told him that a claims adjuster would not be able to come out until the next day. Thereafter, Chandler photographed and videotaped the scene. Then, with the help of several family members and friends, Chandler dismantled the collapsed deck and loaded the debris onto a truck. The wood debris was later hauled away and burned. He testified by deposition *Page 410 
that he removed the debris because of fear that his young daughter would be injured by loose boards or nails.
In October 1992, the plaintiffs filed complaints against the Chandlers and Chandler Construction, alleging several counts of negligence and wantonness. In July 1993, the trial court entered summary judgments in favor of Chandler Construction on all claims against it. The trial court denied the plaintiffs' motion to alter, amend, or vacate its judgment, and the judgment was made final pursuant to Rule 54(b). The plaintiffs appealed. In August 1993, the plaintiffs amended their complaints to add State Auto as a defendant. Thereafter, they amended their complaints to add claims alleging "spoliation of evidence," against all defendants. In February 1994, the trial court entered summary judgments in favor of the defendants on all remaining claims. The plaintiffs appealed as to those claims.
 II.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988); Rule 56(c) Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989); § 12-21-12, Ala. Code 1975. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990).
 III.
The plaintiffs were injured on real property owned by the Chandlers because of a condition on that property. Although the plaintiffs ask this Court to abandon the traditional distinction between trespassers, licensees, and invitees in determining the duty of care owed by a landowner to a person on the premises, we decline to do so. Thus, the duty owed by the landowner to a person injured on his premises because of a condition on the land is dependent upon the status of the injured party in relation to the land. Baldwin v. Gartman,604 So.2d 347 (Ala. 1992); Whaley v. Lawing, 352 So.2d 1090
(Ala. 1977).
"In Alabama an invited social guest is a licensee of the landowner." Bryant v. Morley, 406 So.2d 394, 395 (Ala. 1981). See, also, Graveman v. Wind Drift Owners' Ass'n, Inc.,607 So.2d 199 (Ala. 1992), and McMullan v. Butler, 346 So.2d 950
(Ala. 1977). Recently we defined a landowner's duty to a licensee as follows:
 "The duty owed by landowners toward licensees is not an active one to safely maintain the premises;
rather, the law imposes upon the landowner the duty of not setting traps or pitfalls and not willfully or wantonly injuring the licensee, a 'trap' being a danger that a person who does not know the premises could not avoid by reasonable care and skill."
Graveman, 607 So.2d at 203 (emphasis added). Thus, the Chandlers were not under an active, absolute duty to maintain the wooden deck in a safe condition. However, they were under a duty not to act wantonly. In Whaley, a similar case involving injuries to licensees because of a collapsed "sundeck," we stated: "In order to constitute wantonness, a failure to act must be accompanied by knowledge that someone is probably imperilled, and the failure to act must be in reckless disregard of the consequences." 352 So.2d at 1092.
The plaintiffs argue that they presented substantial evidence of wantonness on the part of the Chandlers and on the part of Kenneth Chandler as an agent for Chandler Construction, because, they contend, the *Page 411 
Chandlers were aware that the deck was rotted in places, that it was located high off the ground, and, thus, that it was unsafe for use, but acted with reckless indifference to that fact by encouraging the plaintiffs to use the deck, without first making it safe. Even viewing the evidence in a light most favorable to the plaintiffs, as nonmovants on the motions for summary judgment, we conclude that they did not meet their burden of presenting substantial evidence of wantonness.
The defendants' knowledge of a dangerous condition, prior to the accident, is the most crucial element of wantonness.Whaley, supra. At most, the evidence indicates that Kenneth Chandler was informed by the home inspector that two boards and a handrail on the deck were rotted in small areas and needed to be repaired or replaced. In his deposition, the home inspector described the deck's condition as it appeared to him only two months before it collapsed.
 "[PLAINTIFFS' ATTORNEY]: In what areas of the deck did you find rotted wood?
 "[INSPECTOR]: I have been thinking about that for quite a while, and to the best of my recollection, there were some soft deck boards and the deck was very high off the ground. . . . And I seem to remember seeing some areas on the outside which, I believe would be in the northwest corner of the deck. I also seem to remember that the stairway had some areas that you could punch your finger into that were soft wood.
 "[PLAINTIFFS' ATTORNEY]: That indicates that the wood was rotting or deteriorating?
"[INSPECTOR]: Yes, sure.
 "[PLAINTIFFS' ATTORNEY]: Now, what size areas were these soft areas on the deck boards or what appeared to be soft boards?
 "[INSPECTOR]: I seem to remember seeing something that was concentrated near the corner.
 "[PLAINTIFFS' ATTORNEY]: That was the northwest corner?
 "[INSPECTOR]: Right. . . . I seem to remember it being a relatively small area, a few inches perhaps."
(Emphasis added.)
The home inspector's testimony is echoed by that of Perry Vanderford, who had made an offer on the Chandlers' property contingent on a home inspection, and who eventually purchased the property:
 "[PLAINTIFFS' ATTORNEY]: What comments do you remember [the home inspector] making about the deck?
 "[VANDERFORD]: He said that it looked like we might want to replace one or two of the floor boards, and he also stated that it looked like we probably would have — I know he said five years, but some extended amount of time or life of the deck, especially if we kept replacing the floorboards one or two at a time as needed.
". . . .
 "[PLAINTIFFS' ATTORNEY]: Was there any discussion, for example, about the cost of the repair of the deck that [the home inspector] was suggesting to be advisable?
 "[VANDERFORD]: I just remember the impression that it was going to be minimal since we were only going to replace a couple of the boards.
". . . .
 "[CHANDLERS' ATTORNEY]: You yourself walked on the deck when you looked at the house; did you not?
"[VANDERFORD]: Yes.
 "[CHANDLERS' ATTORNEY]: Did you notice anything out of the ordinary about the deck?
"[VANDERFORD]: No.
 "[CHANDLERS' ATTORNEY]: Did it shake or wobble or rattle or roll or anything like that?
"[VANDERFORD]: No, it didn't.
 "[CHANDLERS' ATTORNEY]: Did you jump up and down on it?
 "[VANDERFORD]: I don't remember if I did that. We walked around on it and looked. *Page 412 
 "[CHANDLERS' ATTORNEY]: When [the home inspector] was inspecting the deck with you and your wife, did he express any concern about the safety of the deck?
 "[VANDERFORD]: He mentioned replacing the two floorboards.
"[CHANDLERS' ATTORNEY]: The two boards?
"[VANDERFORD]: Yes.
 "[CHANDLERS' ATTORNEY]: Did he say that it was something that had to be done immediately or in the future or do you remember?
 "[VANDERFORD]: I don't remember if he put a time frame on it.
 "[CHANDLERS' ATTORNEY]: Was there any sense of urgency about what he was talking about the deck?
"[VANDERFORD]: Not really."
(Emphasis added.)
The home inspector did not warn that the deck was dangerous; in fact, he noted that with maintenance it had a remaining life span of approximately five years. Although the plaintiffs argue that Kenneth Chandler's experience as a building contractor provided him with constructive notice of any deteriorated condition in the deck, they also emphasize deposition testimony indicating that he was considered cautious with decks and had torn down and replaced a deck on a previous home that he had believed dangerous for his young daughter. Contrary to the plaintiffs' assertion, we believe that evidence of Kenneth Chandler's cautiousness in this regard weighs against a finding of wanton conduct by the Chandlers.
The Chandlers had entertained frequently at the Treeline Drive residence in the months before the accident, with a slightly lesser number of people gathered on the deck, without incident. There was no evidence presented that at any time before the accident, the deck was noticeably wobbly, shaky, or otherwise unstable, so that the Chandlers would have been put on notice of a dangerous condition. Moreover, the Chandlers went onto the deck themselves on the evening of the accident, although they were not on it when it collapsed. Finally, we note that the testimony regarding the collapse indicated that it occurred suddenly, without any warning or gradual manifestation of instability.
Although the destruction of evidence, such as Kenneth Chandler's actions that ultimately resulted in the burning of the materials composing the deck, may in some instances be regarded as a "sufficient foundation for an inference of [the spoliator's] guilt or negligence," May v. Moore, 424 So.2d 596,603 (Ala. 1982), that general rule is not applicable here, because of the particular facts of this case. In May, evidence was presented that the physician who had been sued for malpractice had materially altered the patient's original charts, which reflected how the physician had treated the patient. 424 So.2d at 603. This Court held that the trial court did not err in admitting evidence of the physician's actions.
Recently, in Campbell v. Williams, 638 So.2d 804 (Ala. 1994),cert. denied, ___ U.S. ___, 115 S.Ct. 188, 130 L.Ed.2d 121
(1994), a similar medical malpractice case, we held that the facts in the record supported the following jury charge: "Ladies and gentlemen, spoliation or an attempt to suppress material evidence, by a party or parties to a suit, favorable to the adversary is sufficient foundation for an inference of their guilt or negligence." 638 So.2d at 817, n. 9. InCampbell, evidence was presented that the defendant physician had attempted to have a second physician modify his notes regarding the patient's condition prior to the patient's death. Thus, in both May and Campbell, the defendants had attempted to alter material evidence to make it favorable to them rather than to the plaintiff.
In this case, Chandler recorded the physical appearance of the collapsed deck, on both photographs and videotape. Furthermore, the only use the actual boards from the deck could have been to the plaintiffs would have been to show that their condition was so deteriorated as to have given the Chandlers constructive knowledge of the condition of the deckbefore it collapsed — any knowledge of deterioration in the wood they may have gained after the deck collapsed is immaterial to the plaintiffs' burden of showing *Page 413 
wantonness. Because the plaintiffs are licensees, the relevant issue is not what condition the deck materials were in after the collapse, but, rather, whether the Chandlers had knowledgebefore the collapse that the deck was in such condition that it could not support the weight of approximately 20 people.
The most critical evidence of the condition of the deck before its collapse — and the Chandlers' imputed knowledge — is the report of the independent home inspector employed by the Vanderfords and his deposition testimony regarding the results of his inspection. If the wooden structure had been so deteriorated that the deterioration should have been plainly visible to the Chandlers before the accident, the dangerous condition would have manifested itself as an observable instability in the deck and would have been plainly visible to the independent home inspector employed by the Vanderfords; he noted no such condition.
Thus, under the spoliation of evidence doctrine set forth inMay and Campbell, if the plaintiffs presented evidence that the Chandlers had altered a copy of the inspection report to eliminate a notation that the deck was dangerous or had asked the inspector to do so and to change his testimony, evidence of such conduct would be sufficient to meet the plaintiffs' burden of supporting their claims with substantial evidence. However, under the facts of this case, the general rule relating to a party's spoliation of evidence is not applicable.
Thus, the plaintiffs failed to present substantial evidence that the Chandlers had knowledge of a dangerous condition in the deck and acted with reckless indifference to the plaintiffs' safety. Accordingly, we need not determine whether the plaintiffs' allegation that Kenneth Chandler purchased the residence as an agent of Chandler Construction — so that the construction company would also be liable as an owner of the property — has any merit. The trial court did not err in entering the summary judgments against the plaintiffs on their claims alleging negligence and wantonness.
 IV.
The trial court also entered summary judgments against the plaintiffs on their claims alleging a new tort, "spoliation of evidence." The plaintiffs ask this Court to recognize a separate tort based on a defendant's destruction of evidence. However, in May, supra, and Campbell, supra, where the alleged spoliator was a party to the action, as in this case, no separate cause of action was recognized. Although a few jurisdictions have recognized a new independent tort based on spoliation of evidence,[1] the majority of courts considering the issue have declined to adopt such a new cause of action.[2]
Moreover, as discussed above, the particular facts of this case make it inappropriate for us to consider recognizing a new cause of action at this time. Further, with regard to State Auto, the plaintiffs concede on appeal that it was not involved in the spoliation of evidence. We conclude that the trial court did not err *Page 414 
in entering the summary judgments for all defendants on this claim.
AFFIRMED.
MADDOX, ALMON, SHORES, HOUSTON, KENNEDY, INGRAM and COOK, JJ., concur.
[1] Hazen v. Municipality of Anchorage, 718 P.2d 456 (Alaska 1986); Smith v. Superior Court for Los Angeles County, 151 Cal.App.3d 491,198 Cal.Rptr. 829 (1984); Bondu v. Gurvich,473 So.2d 1307 (Fla.Dist.Ct.App. 1984), rev. denied, 484 So.2d 7
(Fla. 1986); Viviano v. CBS, Inc., 251 N.J. Super. 113,597 A.2d 543 (1991), cert. denied, 127 N.J. 565, 606 A.2d 375 (1992);Smith v. Howard Johnson Co., 67 Ohio St.3d 28, 615 N.E.2d 1037
(1993).
[2] La Raia v. Superior Court in and for Maricopa County,150 Ariz. 118, 722 P.2d 286 (1986); Wilson v. Beloit Corp.,921 F.2d 765 (8th Cir. 1990) (applying Arkansas law); Gardner v.Blackston, 185 Ga. App. 754, 365 S.E.2d 545 (1988); Petrik v.Monarch Printing Corp., 150 Ill. App.3d 248, 103 Ill.Dec. 774,501 N.E.2d 1312 (1986), appeal denied, 114 Ill.2d 556, 108 Ill.Dec. 424, 508 N.E.2d 735 (1987); Murphy v. Target Products,580 N.E.2d 687 (Ind.App. 1991); Koplin v. Rosel WellPerforators, Inc., 241 Kan. 206, 734 P.2d 1177 (1987); Edwardsv. Louisville Ladder Co., 796 F. Supp. 966 (W.D.La. 1992) (applying Louisiana law); Miller v. Montgomery County,64 Md. App. 202, 494 A.2d 761 (1985), cert. denied, 304 Md. 299,498 A.2d 1185 (1985); Panich v. Iron Wood Products Corp.,179 Mich. App. 136, 445 N.W.2d 795 (1989);Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,456 N.W.2d 434 (Minn. 1990); Baugher v. Gates RubberCo., 863 S.W.2d 905 (Mo.App. 1993); Weigl v.Quincy Specialties Co., 158 Misc.2d 753, 601 N.Y.S.2d 774
(Sup.Ct. 1993); Brewer v. Dowling, 862 S.W.2d 156
(Tex.Ct.App. 1993).