THOMPSON, Judge.
Avis L. Johnson sued Oxmoor Ridge Apartments; Investment Company of the South, Inc.; Investment Company of the South, L.L.C.; Dutch Manor Partners, Ltd.; and ICS Management, Inc. (hereinafter together referred to as “the defendants”), seeking damages for an injury she sustained on January 3,1999, on the premises of Oxmoor Ridge Apartments (“the apartments”).[1] The defendants denied liability, and the case was tried before a jury. At the close of Johnson’s case, the defendants moved for a judgment as a matter of law pursuant to Rule 50, Ala. R. Civ. P. After hearing arguments on that motion, the trial court granted the motion and entered a judgment in favor of the defendants. Johnson appealed, and this case was transferred to this court by the su *1160 preme court, pursuant to § 12-2-7(6), Ala. Code 1975.
“An appellate court, when reviewing a ruling on a motion for a judgment as a matter of law, uses the same standard the trial court used initially in granting or denying the motion. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11,1987, the nonmovant must present ‘substantial evidence’ in order to withstand a motion for a judgment as a matter of law. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, supra, at 1353. In reviewing a ruling on a motion for a judgment as a matter of law, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).”
Bell v. T.R. Miller Mill Co., 768 So.2d 953, 956 (Ala.2000) (footnote omitted).
The record indicates that Johnson had been a tenant of the apartments for more than a year. Johnson testified that she first lived in Building 411, apartment number 7 beginning in March 1997. Johnson explained that, at that time, she paid the rent called for under the lease agreement, but her mother was listed on the lease agreement as the tenant leasing the premises. Johnson testified that on September 1, 1998, she entered into an agreement to lease apartment number 7 in her own name. It is undisputed that Johnson immediately fell behind in her rent.
Johnson testified that in mid-November 1998 she received a letter from Jim Sande-fer, the attorney for the apartments, regarding her failure to pay her rent pursuant to the lease agreement. That letter stated, in pertinent part:
“YOU ARE HEREBY NOTIFIED, that in consequence of your default in the failing to pay rent in accordance with your lease or rental agreement concerning the above-referred to premises, that your possessory interests in said premises will terminate TWENTY FOUR (24) HOURS after the service of this Notice. You are then to deliver possession of the said premises to me or my agent or an Unlawful Detainer Action will be filed against you. Should you want to reinstate your lease, you must contact me immediately.”
Johnson stated that she contacted San-defer in November 1998 and again in December 1998; she did not pay any installments of her rent due under the lease agreement during those months. Johnson testified that Sandefer instructed her to move out of apartment number 7. Johnson first testified that Sandefer did not give her an exact date by which to remove her belongings from the apartment, but she later stated that in the third week of December 1998 Sandefer agreed to allow her to stay in the apartment until the first week of January 1999. It is undisputed, however, that in November 1998 Sandefer, on behalf of some of the defendants, instituted an unlawful-detainer action against Johnson and that the court hearing that *1161 action entered a default judgment against Johnson on December 2, 1998. On December 17, 1998, the court in which the unlawful-detainer action was filed issued a writ of execution of its December 2, 1998, judgment in that action. Johnson testified at trial, however, that she had no knowledge of the unlawful-detainer action, the judgment in that action, or the writ of execution issued in that action until after she suffered the injury for which she seeks compensation in this action.
Johnson testified that the manager of the apartments had left her employment in the fall of 1998 and that a notice posted near Johnson’s mailbox instructed tenants, if they wanted to discuss leasing issues, to speak with the manager of another apartment complex, which was presumably also owned by some of the defendants. Johnson testified that in December 1998 she spoke to someone at the other apartment complex regarding her request for additional time to move out of the apartment. Although there were several discrepancies in Johnson’s testimony regarding the details of her agreement with the unidentified person at the other apartment complex, the essence of Johnson’s testimony was that that person agreed that, if Johnson removed her belongings and cleaned her apartment, she could turn in her keys to apartment number 7 during the first week of January 1999.
On the night of January 3, 1999, as Johnson returned to the apartment to retrieve the last of her belongings, she slipped on some ice in the apartments’ parking lot and fell. As a result of that fall, Johnson suffered a broken leg. The evidence tended to indicate that it had rained for the two days before January 3, 1999, that water had been standing in the parking lot during that time, and that, on the night of January 3, 1999, it was very cold outside. At the trial, Johnson insisted that she did not see the ice in the parking lot and that she had no reason to suspect that there might be ice in the parking lot. She also insisted that the defendants knew or should have known of the hazardous condition of the parking lot and should have warned her of that condition. .
During the trial, Itell Linson, another tenant of the apartments, testified on behalf of Johnson. Linson testified that ice tended to form in the parking lot each year in the winter if temperatures fell below freezing during or soon after a rain. Lin-son also stated that the apartment management set out signs warning of the dangers of ice; however, she could not say when those signs were set out or whether they were set out before or after Johnson’s January 3, 1999, fall. As Linson readily admitted, one part of her testimony was different from a portion of a sworn statement she had made to the investigator for Johnson’s attorney; as detailed later in this opinion, Linson explained the reason for that discrepancy. Johnson sought repeatedly to have Linson’s written statement admitted into evidence, but the trial court repeatedly sustained the defendants’ objections to the admission of that statement.
Also during the trial, Johnson called Andrew Graettinger, Ph.D., as an expert witness in the field of geotechnical engineering. Johnson sought repeatedly to elicit from Dr. Graettinger his opinion regarding certain conditions of the parking lot; each time, however, the defendants objected, usually on the basis of relevance and Johnson’s failure to lay a proper predicate for Dr. Graettinger’s opinion testimony. The trial court sustained the vast majority of those objections.
After Johnson rested her presentation of evidence, the defendants moved for a judgment as a matter of law. As it began receiving arguments on the motion for a *1162 judgment as a matter of law, the trial court found that, given the applicable law and the evidence that had been presented thus far in the trial, Johnson had not presented sufficient evidence to establish that she was an invitee on the apartments’ premises at the time of her fall. The trial court therefore instructed the parties to address the defendants’ motion for a judgment as a matter of law “from that standpoint.” While arguing their respective positions on that motion, the defendants contended that Johnson was a trespasser, and Johnson argued only the issue of wantonness, apparently in an effort to contend that she was a licensee at the time of her fall. Johnson did not object to the trial court’s finding that she was not an invitee; she did not argue against that finding; and she did not request permission to place an argument on the record with regard to her possible status as an invitee.
On appeal, Johnson argues that the trial court erred in granting the defendants’ motion for a judgment as a matter of law because, she contends, she was an invitee on the apartments’ premises at the time of her January 3, 1999, fall in the apartments’ parking lot. However, as stated above, Johnson did not argue before the trial court that she was an invitee. It is well settled that this court may not consider an issue that the appellant raises for the first time on appeal. Alfa Mut. Gen. Ins. Co. v. Oglesby, 711 So.2d 988 (Ala.1997); Abbott v. Hurst, 643 So.2d 589 (Ala.1994); McLemore v. Fleming, 604 So.2d 353 (Ala.1992).
Even assuming that the issue of Johnson’s possible status as an invitee was preserved for appellate review, Johnson cited only two cases in support of her argument on this issue in her brief to this court. Johnson argued in her brief on appeal only that she was an invitee because she conferred a benefit upon the defendants; she cited Collier v. Necaise, 522 So.2d 275 (Ala.1988), in support of her argument that one who confers a material or commercial benefit upon a landowner enjoys the status of an invitee. Johnson contends that she conferred a material or commercial benefit upon the defendants by agreeing to remove her belongings from the apartment and to clean the apartment upon her departure by performing such tasks as removing food from the apartment and vacuuming. In her brief on appeal, Johnson also cited Central Parking System of Alabama v. Steen, 707 So.2d 226 (Ala.1997), for the proposition that the issue of her status at the time of her fall is a question for the jury to resolve. However, a tenant who has held over after the expiration of the term of his or her lease, or after the termination of that lease by an action such as the unlawful-detainer action instituted in this case, has the duty to peaceably surrender possession of the leased premises. Reynolds v. Bryant, 281 Ala. 372, 202 So.2d 734 (1967); Solomon v. Rogers, 210 Ala. 423, 98 So. 370 (1923). We cannot say that Johnson’s removal of her own belongings and her cleaning the apartment amounted to more than her fulfillment of her duty to peaceably surrender possession of the leased premises or that those acts conferred a material or commercial benefit upon the defendants such as would elevate her status to that of an invitee. See Cottier v. Necaise, supra.
Also as to this issue, Johnson, for the first time in her reply brief, asserted that she was an invitee because she was a tenant injured in a common area of the apartments’ premises. In her reply brief, Johnson cites a number of cases in support of that argument, including Gentle v. Pine Valley Apartments, 631 So.2d 928 (Ala. 1994); Campbell v. Valley Garden Apartments, 600 So.2d 240 (Ala.1992); and Mil *1163 ler v. Archstone Communities Trust, 797 So.2d 1099 (Ala.Civ.App.2001). However, “[bjecause [Johnson] did not raise this issue in [her] initial brief or at trial, we ‘will simply treat such [issue] as not before the Court.’ ” New Plan Realty Trust v. Morgan, 792 So.2d 351, 364 (Ala.2000) (quoting Kennesaw Life & Accident Ins. Co. v. Old Nat’l Ins. Co., 291 Ala. 752, 754, 287 So.2d 869, 871 (1973)) (emphasis added). See also Byrd v. Lamar, 846 So.2d 334 (Ala. 2002); C & S Family Credit of Alabama, Inc. v. McNairy, 613 So.2d 1232 (Ala. 1992); Improved Benevolent & Protective Order of the Elks of the World v. Moss, 855 So.2d 1107 (Ala.Civ.App.2003). Also, an appellate court may not reverse a judgment on a ground or argument not advanced before the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala.2000); Kitchens v. Maye, 623 So.2d 1082 (Ala.1993); Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala. 1988).
Given the arguments Johnson made before the trial court and before this court, we cannot say that she has demonstrated that she presented sufficient evidence on the issue of her alleged status as an invitee to allow that issue to be presented to the jury. See Bell v. T.R. Miller Mill Co., supra. Therefore, Johnson’s status at the time of the January 3, 1999, incident was either that of a licensee or a trespasser. For the purposes of this opinion, we will give Johnson the benefit of the doubt and assume that she was a licensee at the time of her January 3, 1999, fall. Johnson contends that, even assuming she was a licensee, there was sufficient evidence to defeat the defendants’ motion for a judgment as a matter of law and to justify submitting her wantonness claim to the jury. We first briefly address some evidentiary issues Johnson raised in order to determine whether that evidence was admissible before reaching the issue of whether Johnson presented sufficient evidence to submit her wantonness claim to the jury.
Johnson maintains in her brief on appeal that the trial court erred in excluding “the written statement and testimony” of Itell Linson, the witness who testified on behalf of Johnson and who had, at the time of the trial, been a resident at the apartments for 14 years. In her brief on appeal, Johnson alleges that the trial court improperly sustained the defendants’ objections, which were based on the grounds of relevancy, to some of Linson’s testimony; that the trial court did not allow her to properly question Linson regarding an allegedly “inconsistent written statement”; and that the trial court improperly refused to allow her to submit Linson’s written statement into evidence.
During the trial, Johnson’s initial questioning established Linson’s name and that she had lived in the apartments for a number of years. Johnson then immediately began to attempt to question Linson regarding a written statement she made in 2001. Johnson failed, however, to first actually question Linson about her knowledge of any facts pertinent to this action or about the facts set forth in the written statement. The defendants objected repeatedly, citing a lack of relevance as the grounds, to Johnson’s inquiries regarding whether Linson had signed the statement, whether it was truthful, and whether she had intended to make a truthful statement in executing the written statement. The trial court sustained those objections and informed Johnson that, given Linson’s testimony up and until that time, Johnson had not reached a point at which she needed to refer to the written statement.
Johnson then began repeatedly questioning Linson regarding an alleged inaccuracy in her written statement, and the defendants again objected. Johnson responded that she wanted to question Lin- *1164 son regarding her written statement, and she maintained that the “statement says something different than what [Linson is] saying.” Outside the presence of the jury, the trial court sustained the defendants’ objection and informed Johnson that she had not yet established the need to use Linson’s written statement because Linson had not yet testified in a manner inconsistent with that statement.
Linson eventually testified that, although her written statement indicated that she had complained to the management of the apartments about ice in the parking lot, she had not, in fact, made such a complaint. Linson testified that she spoke with an investigator hired by Johnson and that the investigator wrote the written statement she signed. Linson explained that she was in a hurry to leave for church when she spoke with the investigator and that she signed the statement without reading it. Linson also testified that the investigator promised to send her a copy of the written statement but that he had not done so. On questioning by the defendants, Linson testified that she had first seen the written statement the day before the trial and that she informed Johnson’s attorney that the assertion contained in the written statement that she had complained to the managers of the apartments regarding ice was not accurate. Linson also stated she would have informed Johnson’s attorney of the inaccuracy in the written statement sooner had she seen it earlier.
As Johnson points out, “[t]he credibility of a witness may be attacked by any party.” Rule 607, Ala. R. Evid. With regard to the admission of extrinsic evidence such as a written statement that might be used to attack a witness’s credibility, Rule 613(b), Ala. R. Evid., provides, in pertinent part:
“(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness has been confronted with the circumstances of the statement with sufficient particularity to enable the witness to identify the statement and is afforded an opportunity to admit or to deny having made it.”
Johnson argues that the trial court’s evidentiary rulings prevented her from confronting Linson and giving Linson an opportunity to deny the contents of her written statement. However, our review of the record indicates otherwise. Johnson improperly, and repeatedly, attempted to “impeach” Linson with the facts set forth in her written statement before Lin-son had an opportunity to testify in a manner that contradicted the contents of that statement. During the line of questioning to which the defendants objected, Johnson did not ask Linson whether she had made any complaint regarding ice in the parking lot to the apartment managers; rather, Johnson repeatedly asked Linson whether she had previously made the statement that she had complained to the management. The trial court did not abuse its discretion in sustaining the defendants’ objections as to Johnson’s improper attempts to impeach Linson before Linson testified in a manner that contradicted her written statement.
When Johnson finally asked Lin-son whether she had complained to the management of the apartments regarding ice in the parking lot, Linson denied doing so but admitted that, in her written statement, it stated that she had complained about ice in the parking lot. As detailed previously, however, Linson admitted and explained the inconsistencies between her trial testimony and her written statement. Had Linson denied making the statement *1165 contained in her written statement, Johnson might arguably be entitled to have the written statement admitted into evidence in order to establish that Linson had made contradictory statements. However, in this case, Linson admitted that the two statements were contradictory; the content of the written statement was evidence that was already before the court and the jury. Therefore, the admission into evidence of the written statement was not necessary.
The comments to Rule 613(b) are also instructive. Those comments point out that, if a witness admits making a prior inconsistent statement, the party seeking to impeach the witness on that basis is precluded from using extrinsic evidence to prove the existence of the statement already acknowledged. Rule 613(b), Ala. R. Evid., “Advisory Committee’s Notes” (citing Usrey v. State, 36 Ala.App. 394, 56 So.2d 790 (1952)).
“It is, of course, permissible and proper to attempt to attack the credibility of a witness by showing that at a prior time and place he made a statement which was at variance with or contradictory to the testimony he gave at the instant trial. However, before this privilege is extended, the witness must first deny that he made the prior statement. Otherwise no occasion for impeachment arises.”
Usrey v. State, 36 Ala.App. at 396, 56 So.2d at 793.
Johnson was allowed to present evidence that Linson’s written státement was, with regard to the issue about which Johnson questioned her, different from her trial testimony. Linson admitted and attempted to explain the inconsistency between the written statement and her testimony. Given Rule 613(b) and the authority of Usrey v. State, supra, we cannot say that the trial court erred in refusing to admit into evidence Linson’s written statement.
Johnson next argues that the trial court erred in refusing to allow her witness, Dr. Andrew Graettinger, to testify as an expert regarding his opinion concerning certain aspects of the condition of the parking lot in which Johnson fell.[2] In essence, Johnson expected Dr. Graettinger’s testimony to be that it was his opinion that after a rain a ground-water table located under the parking lot in which Johnson had fallen continued to “exude” water for some time and that, as a result, the parking lot would remain wet.
In her brief on appeal, Johnson quotes at length from a discussion in Hollis v. Scott, 516 So.2d 576, 579-81 (Ala.1987), regarding the predicate that must be established for expert opinion testimony to be admissible. Although several points could be made pertaining to this issue, we find the following to be dispositive of this issue.
Johnson’s injury occurred on January 3, 1999. The evidence at trial established that, in March 2002, Dr. Graettinger first observed the parking lot in which Johnson fell; he did so without leaving his automobile. Dr. Graettinger testified that later, in April 2002, he conducted an “experiment” by having his wife take photographs of the parking lot after a rain. He first took his wife to the parking lot to instruct her as to which areas of the parking lot to *1166 photograph; he stated that in doing so he left his vehicle and walked around the parking lot. Relying on the photographs his wife took of the parking lot, plus some weather data for April 2002 and September 2002, Dr. Graettinger reached a conclusion about water flow on or under the parking lot.
The trial court, however, sustained the defendants’ objections to allowing Dr. Graettinger to testify regarding that opinion. In doing so, the trial court, among other things, asked Johnson to explain how the weather conditions under which Dr. Graettinger’s experiment was conducted pertained to the conditions that existed in January 1999, more than three years earlier, when Johnson fell in the parking lot. Johnson replied that the experiment demonstrated that water flowed from the parking lot on a recurrent basis and that “to have ice, you have to have water.” The trial court again sustained the defendants’ objection.
The admission of evidence is within the trial court’s discretion. Johnson contends that the trial court disallowed Dr. Graettinger’s testimony because it incorrectly concluded that he was not properly qualified. Whether a witness is allowed to testify as an expert is a matter left to the sound discretion of the trial court. Southern Energy Homes, Inc. v. Washington, 774 So.2d 505 (Ala.2000); Ellingwood v. Stevens, 564 So.2d 932 (Ala. 1990); Maslankowski v. Beam, 288 Ala. 254, 259 So.2d 804 (1972). The scope of the matters upon which a witness offered as an expert is allowed to testify is also a matter within the trial court’s discretion. W.S. v. T.W., 585 So.2d 26 (Ala.1991); Ellingwood v. Stevens, supra; Bergob v. Scrushy, 855 So.2d 523 (Ala.Civ.App.2002). We note that it was late in Dr. Graettinger’s testimony before Johnson actually offered Dr. Graettinger as an expert, and, when she did so, the trial court indicated that it would accept Dr. Graettinger as an expert. However, the scope of the matters to which the trial court could allow Dr. Graettinger to testify remained in the trial court’s discretion. See W.S. v. T.W., supra; Bergob v. Scrushy, supra.
The transcript of the trial indicates that the trial court repeatedly informed Johnson that she must lay the proper predicate for the admission of Dr. Graettinger’s opinion testimony.
“The party seeking to introduce the expert testimony must lay the proper predicate.
“First, the expert testimony must be beyond the ken of the average juror. Ex parte Hill, 553 So.2d 1138 (Ala.1989).
“Second, the person testifying must be qualified as an expert. The competency and qualifications of a person offered as an expert witness are largely left to the trial court’s discretion. ...
“Third, the expert witness must base his or her opinion upon either (1) facts of which the witness has firsthand knowledge or (2) facts that are assumed in a hypothetical question asked of the expert. Ex parte McAllister, 541 So.2d 1104, 1107 (Ala.1989).”
W.S. v. T.W., 585 So.2d at 27-28.
In this case, the evidence would support a conclusion that Dr. Graettinger had not examined or inspected the condition of the parking lot, even as it existed in the spring of 2002 when he observed it once from a vehicle and another time when he walked around the parking lot. Dr. Graettinger admitted that he did not investigate the parking lot or perform any tests on the parking lot. Rather, Dr. Graettinger based his testimony on photographs of the parking lot that were taken by someone other than himself. Dr. Graettinger *1167 testified that he had never personally observed the parking lot when it was wet, much less in weather similar to the weather that existed at the time of Johnson’s January 3, 1999, fall. Those facts support a conclusion that Dr. Graettinger’s testimony was not based upon “facts of which the witness has firsthand knowledge.” W.S. v. T.W., 585 So.2d at 28. Also, Johnson did not use hypothetical questions in her examination of Dr. Graettinger. See id.
Also, it seems the trial court based its exclusion of some of Dr. Graet-tinger’s testimony on a conclusion that it was not relevant. The trial court asked Johnson to explain the relevance of testimony based on weather data from late spring and late summer 2002, and Johnson responded only that the testimony based on that data related to conditions of the parking lot after a rain. However, the temperatures reflected in that weather data were widely different from those present at the time of Johnson’s January 3, 1999, fall in the parking lot. Johnson did not attempt to question Dr. Graettinger regarding his opinions about the condition of the parking lot, assuming that weather conditions existed that were similar to those present at the time of Johnson’s fall. Given the discretion afforded the trial court in ruling on evidentiary issues, we cannot say that Johnson has demonstrated that the trial court erred in excluding Dr. Graettinger’s opinion testimony about the condition of the parking lot.
Johnson also challenges the trial court’s refusal to admit into evidence certain photographs, taken by Dr. Graet-tinger’s wife during the “experiment,” as well as the weather data for April 2002 and September 2002. The decision to admit photographs into evidence is within the trial court’s discretion. Burlington N. R.R. v. Whitt, 575 So.2d 1011 (Ala.1990). “A photograph is relevant and admissible in order to explain and apply the evidence when it will enable the court and the jury to better understand the conditions or matters in issue.” Id. at 1020.
The photographs at issue were offered into evidence in support of Dr. Graettinger’s opinion testimony. However, we have already concluded that the trial court did not abuse its discretion in excluding Dr. Graettinger’s opinion testimony. Johnson has failed to demonstrate that the photographs were “relevant and admissible” to “explain and apply” the evidence she expected Dr. Graettinger to supply but that the trial court excluded as inadmissible. See Burlington N. R.R. v. Whitt, 575 So.2d at 1020. Similarly, the weather data pertained to conditions in April 2002 and September 2002; Johnson has not alleged that that evidence had any relevance outside serving as a basis for Dr. Graettinger’s excluded testimony. Therefore, we cannot say that Johnson has demonstrated error as to this issue.
As previously stated, we have determined that Johnson failed to demonstrate that she was an invitee at the time of her January 3, 1999, fall, and, therefore, we will assume for the purposes of this opinion that Johnson was a licensee at that time. “The duty owed by a landowner to a licensee is to abstain from willfully or wantonly injuring the licensee and to avoid negligently injuring the licensee after the landowner discovers a danger to the licensee.” Hambright v. First Baptist Church-Eastwood, 638 So.2d 865, 868 (Ala.1994).
“ ‘The duty owed by landowners toward licensees is not an active one to safely maintain the premises; rather, the law imposes upon the landowner the duty of not setting traps or pitfalls and not wilfully or wantonly injuring the licensee, a “trap” being a danger *1168 that a person who does not know the premises could not avoid by reasonable care and skill.’
“Graveman [v. Wind Drift Owners’ Ass’n, Inc.], 607 So.2d [199,] 203 [ (Ala. 1992) ] (emphasis added [in Christian ]). ... Tn order to constitute wantonness, a failure to act must be accompanied by knowledge that someone is probably imperilled, and the failure to act must be in reckless disregard of the consequences.’ [Whaley v. Lawing,] 352 So.2d [1090,] 1092 [ (Ala.1977) ].”
Christian v. Kenneth Chandler Constr. Co., 658 So.2d 408, 410 (Ala.1995).
In her brief on appeal, Johnson argues only that she presented sufficient evidence of wantonness on the part of the defendants to warrant submitting that issue to the jury. Johnson admits there is no direct evidence that the defendants had any knowledge of the allegedly defective condition of the parking lot, but she contends that wantonness can be inferred from a number of facts in this case. Our supreme court has stated that “[t]he defendants’ knowledge of a dangerous condition, prior to the accident, is the most crucial element of wantonness.” Christian v. Kenneth Chandler Constr. Co., 658 So.2d at 411.
In setting forth the facts that she says indicate that the defendants’ conduct was wanton, Johnson first cites to some evidence tending to indicate that the condition of the parking lot had not changed in the three years between her fall and the trial of this matter. She also relies on Linson’s testimony that ice tended to form in the parking lot each year when the temperatures fell below freezing and that, at some point either before or after Johnson’s January 3, 1999, fall, there were signs warning of the dangers of ice at the apartments. Johnson also cites Linson’s written statement, which Linson later contradicted in her sworn trial testimony, in which Linson was quoted as saying that she had contacted the management of the apartments to complain about ice forming in the parking lot. Johnson also refers to Dr. Graettinger’s testimony that a water table existed under the parking lot; however, Dr. Graettinger did not testify regarding several of the other “facts” Johnson refers to in her brief on appeal that pertained to Dr. Graettinger’s supposed opinions regarding the effects of that water table on the condition of the parking lot.
Johnson does not contend that the defendants knew of the water table or its alleged effect on the parking lot or that that they knew that water “exuded” from the cracks in the parking lot for some time after a rain. She also does not contend that the defendants knew that, as a result of that alleged condition in the parking lot, ice would form on the night of January 3, 1999. In fact, at the time of her fall, Johnson, who had lived at the apartments for almost two years, insisted that she herself did not know and could not have known of the possibility of the formation of ice in the parking lot.
We simply cannot say that the admissible evidence in the record on appeal tends to indicate, or to raise an inference, that the defendants had knowledge of a dangerous condition in the parking lot or that they acted with “reckless disregard” of Johnson’s safety. Christian v. Kenneth Chandler Constr. Co., 658 So.2d at 410. We must conclude that Johnson failed to present substantial evidence that would withstand the defendants’ motion for a judgment as a matter of law. See Bell v. T.R. Miller Mill Co., supra.
In her brief on appeal, Johnson also contends that the defendants were incorrect in their assertion that the ice was an open and obvious condition and that, to the *1169 extent the trial court might have relied on that theory in reaching its decision to enter a judgment as a matter of law in favor of the defendants, the trial court erred. However, given this court’s disposition of the previous issues, we need not address that argument.
The appellees’ motion to strike portions of the appellant’s brief on appeal is denied.
AFFIRMED.
CRAWLEY and PITTMAN, JJ„ concur.
YATES, P.J., and MURDOCK, J., concur in the result.

. The record does not clearly indicate the nature of the individual defendants’ relationships to or their interests in the apartments.

. The defendants contend that Johnson failed to make the required offer of proof pertaining to her expectations of the content of the excluded portions of Dr. Graettinger's testimony. See Rule 103(a)(2), Ala. R. Evid. However, our review of the record indicates that Johnson's arguments when the trial court excluded her offered evidence sufficiently apprised the trial court of the expected content of Dr. Graettinger’s testimony; therefore, a formal offer of proof was unnecessary.