MOORE, Judge.
Renee Freeman appeals from a summary judgment entered by the Jefferson Circuit Court (“the trial court”) in favor of her son, Brandon Freeman, and his wife, Kimberly Freeman, on Renee’s claim of negligence. We affirm.

Facts and Procedural History

On June 30, 2009, Renee filed a complaint in the trial court against Brandon and Kimberly, asserting a claim of negligence.[1] In her complaint, Renee asserted that she had been injured when a wooden swing that she was sitting in in Brandon and Kimberly’s yard collapsed. Brandon and Kimberly filed an answer on August 14, 2009.
On May 11, 2010, Brandon and Kimberly filed a motion for a summary judgment, attaching thereto excerpts from the depositions of Renee, Renee’s husband Rodney, Brandon, and Kimberly. The testimony in those depositions revealed the following facts. Renee testified in her deposition that she has two children, Brandon and Amber Rizzo. She stated that Brandon and Kimberly have two children, Cade and Lexi. Amber, who is married to Ryan Rizzo, also has a son, Colby. Renee stated that she lives approximately four and a half miles from Brandon and Kimberly’s home, which they have been living in for approximately eight years, and that she visits their house at least once a month and sometimes more. According to Renee, when Brandon and Kimberly purchased the house, the swing was already there.
*904 Renee testified that, on March 8, 2009, she was returning Cade to Brandon and Kimberly’s house after he had spent the night with her. According to Renee, Cade was hungry and wanted ice cream. While Cade stayed at Brandon and Kimberly’s house, Renee and Lexi went to a store and purchased chicken for Lexi and ice cream for Brandon, Kimberly, and Cade, and she returned with Lexi and the food to Brandon and Kimberly’s house. Renee stated that when she and Lexi returned to the house, Amber and Ryan and some neighborhood children were in Brandon and Kimberly’s yard, so she put the ice cream away because she had not bought enough for all of them. According to Renee, she, Amber, Colby, and Lexi were sitting on the swing while the boys were throwing a football. She stated that the swing seemed fíne when they all sat on it and that, although there had been nothing preventing her from looking at the swing before she sat on it, she had not checked the swing to see if it was operable and she had not thought that it was necessary for her to do so. She stated' that, based on her use and observation of the swing on previous occasions, she thought it was fine to sit on. According to Renee, they had been sitting on the swing for maybe 10 minutes and the next thing she remembers was that she woke up on the ground.
Renee stated that she had sat on the swing maybe 10 or 20 times before she was injured and that the last time she had sat on the swing before the accident was probably in the fall of 2008. She stated that she had never noticed anything wrong with the swing when she had sat on it in the past, that she would not have sat on the swing if she had seen there was anything wrong with it, and that, looking at it from the outside, there was no indication that there was anything wrong with the swing. Renee testified that she did not think that Brandon or Kimberly knew there was anything wrong with the swing and that, if Brandon had known there was something wrong with the swing, he would not have allowed her or his children to sit on it. She stated that the only negligence that had occurred was that Brandon did not check the swing to see if there was anything wrong with it. According to Renee, Brandon told her the swing just crumbled when he went to take it down and throw it away.
Kimberly testified in her deposition that there is a wooden sidewalk in their backyard that is old and rotten, that it needs to be replaced or torn down, and that it is unsafe. Rodney testified that he had helped replace a wooden deck that was in Brandon and Kimberly’s backyard and that the deck had been rotten. Rodney testified that, unlike the deck, you could not see that the swing was rotten, that it looked fine, that he had never had any concern about the swing before the accident, and that he had never seen anything wrong with the swing. Kimberly stated that she did not know that the swing was rotten but that, looking back on the condition of the wooden deck and the wooden sidewalk, “maybe [they] should have known” that the swing was rotten. She stated that she had had no indication that the swing was unsafe before the accident and that she had allowed her children to play on the swing but that, if she had thought it was unsafe, she would not have.
Brandon testified in his deposition that “hindsight looking back, yes, I would say that I should have replaced the swing,” because, he said, he had replaced the deck, which was rotten, and a playhouse that still stood in the backyard was also rotten. He stated that he felt like he should have replaced the swing. He also stated, however, that he and his family “always” sat in the swing. Brandon testified that, at the time of the accident, he heard the wood *905 when it snapped and the swing came down. He stated that, up until he tore the swing down, he had had no knowledge that there was anything wrong with the swing and that he would not have allowed anybody to use the swing if he had known that it was bad.
Renee filed an opposition to Brandon and Kimberly’s summary-judgment motion on June 4, 2010.[2] On June 14, 2010, the trial court entered a summary judgment in favor of Brandon and Kimberly; that judgment stated, in pertinent part:
“The facts in this premises-liability action are mostly undisputed. Renee Freeman is the mother of Brandon Freeman and the mother-in-law of Kimberly Freeman. While visiting [Brandon and Kimberly’s] home, she sustained injuries when a swing on which she was sitting collapsed. The swing was located in the back yard and she had been sitting in it for a short period of time when it collapsed. She had sat in the swing on many other occasions while visiting [Brandon and Kimberly’s] home.
“The first issue to be determined is whether [Renee] was an invitee as claimed by her or a licensee as claimed by [Brandon and Kimberly], She was returning her grandchildren, [Brandon and Kimberly’s] children, to their home after an overnight visit with her. She had previously gone to Wal-Mart to get ice cream for her grandchildren and other family members. When she returned she sat in the swing and a short time later it collapsed. In viewing the evidence in a light most favorable to the nonmovant, and resolving all reasonable doubts in her favor, the Court considers Renee was an invitee rather than a licensee. An invitor’s duty to an invitee is to keep his premises in a reasonably safe condition, and, if the premises are unsafe, to warn of hidden defects and dangers that are known to him, but are unknown or hidden to the invitee. Ex parte Kraatz, 775 So.2d 801 (Ala.2000). A premises owner also has no duty to warn the invitee of open and obvious defects in the premises, which the invitee is aware of or should be aware of through the exercise of reasonable care. The entire basis of an invitor’s liability rest upon his superior knowledge of the danger which causes the invitee’s injuries. If that superior knowledge is lacking, the invitor cannot be held liable. Harding v. Pierce Hardy Real Estate, 628 So.2d 461 (Ala.1993). The undisputed evidence in this ease is that neither [Renee] nor [Brandon and Kimberly], prior to the accident, had knowledge of the alleged defective swing. In fact, in her deposition testimony, [Renee] stated that she never noticed anything wrong with the swing and would not have sat in it had she known otherwise. She also stated that she did not believe that either [Brandon or Kimberly] knew that anything was wrong with the swing pri- or to the accident. [Brandon and Kimberly] also testified that prior to the accident they were unaware of anything being wrong with the swing.
“[Renee’s] claim is based upon the theory that because [Brandon and Kimberly’s] wooden deck had become rotted and was replaced and a playhouse and a sidewalk were also in poor condition that it must naturally follow that [Brandon and Kimberly] reasonably knew that the swing was also defective. However, there was no testimony by any of the parties that prior to the accident anyone had knowledge of the defective condition of the swing. Even if there were de *906 fects at other locations on the premises the Court cannot speculate that this constitutes notice of a hidden defect in the swing. To the contrary, the evidence is undisputed that, prior to the accident none of the parties had notice of a defect to the swing. Without notice [Brandon and Kimberly] eannot.be liable to [Renee].
“Therefore, upon consideration of the pleadings, including the motion and attachments thereto and opposition of [Renee] and arguments of counsel the Court finds that there is no genuine issue of material fact and [Brandon and Kimberly] are entitled to a Judgment as a Matter of Law.”
On June 28, 2010, Renee filed what she styled as a Rule 60(b), Ala. R. Civ. P., motion to alter or amend the trial court’s judgment. Brandon and Kimberly filed a response to Renee’s motion on July 9, 2010. On July 13, 2010, the trial court entered an order denying Renee’s motion. Renee filed a notice of appeal to the Alabama Supreme Court on August 6, 2010; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
Brandon and Kimberly filed a motion to dismiss the appeal or to strike issues raised on appeal, asserting that Renee’s notice of appeal was not filed within 42 days “of the date of the entry of the judgment or order appealed from,” pursuant to Rule 4, Ala. R.App. P., and that Renee’s filing of a Rule 60(b) motion did not toll the time for taking an appeal, citing Keith v. Moone, 771 So.2d 1014, 1017 (Ala.Civ.App.1997). Brandon and Kimberly argue that, as a result, although Renee has timely appealed the trial court’s order denying her Rule 60(b) motion, she has failed to preserve the right to appeal the underlying judgment. We disagree.
“The law is well-settled that ‘the nomenclature of a motion is not controlling.’ Rebel Oil Company v. Pike, 473 So.2d 529, 531 (Ala.Civ.App.1985). A trial court may look to the relief sought within the motion.” Post v. Duffy, 603 So.2d 1070, 1070 (Ala.Civ.App.1992). In the present case, Renee denominated her post-judgment motion as a “motion under Rule 60(b) to alter or amend.” In that motion, she asserted that there remained an issue of material fact that should be decided by a jury and, thus, that the summary judgment entered by the trial court was inappropriate. Renee clearly asserted in the body of the motion, therefore, that she was seeking relief from the judgment pursuant to Rule 59(e), Ala. R. Civ. P., which allows a trial court to alter, amend, or vacate a judgment, rather than pursuant to Rule 60(b). See Jenkins v. Landmark Chevrolet, Inc., 575 So.2d 1157, 1159 (Ala.Civ.App.1991). We therefore conclude that Renee’s motion was a Rule 59(e) motion; because the filing of a Rule 59 motion suspends the running of the time for filing a notice of appeal, see Rule 4(a)(3), Ala. R.App. P., we conclude that Renee’s appeal from the trial court’s summary judgment was timely. We therefore deny Brandon and Kimberly’s motion to dismiss the appeal or to strike the issues raised on appeal.

Standard of Review

“ ‘ “This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & *907 Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-58 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a pri-ma facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).” ’
“Prince v. Poole, 935 So.2d 431, 442 (Ala.2006) (quoting Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004)).”
Gooden v. City of Talladega, 966 So.2d 232, 235 (Ala.2007).

Discussion

On appeal, Renee argues that the trial court erred in entering a summary judgment in favor of Brandon and Kimberly. She asserts that the trial court properly determined that Renee was an invitee rather than a licensee but that the trial court failed to properly apply the relevant authority in determining that the question whether Brandon and Kimberly knew that the swing was defective was not in dispute. In response, Brandon and Kimberly argue that Renee was, in fact, a licensee rather than an invitee.
‘“[T]he duty owed by the landowner to a person injured on his premises because of a condition on the land is dependent upon the status of the injured party in relation to the land.’ Christian v. Kenneth Chandler Constr. Co., 658 So.2d 408, 410 (Ala.1995).
““‘The three classifications of persons coming onto the land are trespasser, licensee, and invitee.... In order to be considered an invitee, the plaintiff must have been on the premises for some purpose that materially or commercially benefited the owner or occupier of the premises.” ’
“Ex parte Mountain Top Indoor Flea Market, Inc., 699 So.2d 158, 161 (Ala.1997) (quoting Sisk v. Heil Co., 639 So.2d 1363, 1365 (Ala.1994)). ‘The distinction between a visitor who is a licensee and one who is an invitee turns largely on the nature of the visit which brings the visitor on the premises rather than the acts of the owner which precedes the visitor’s coming.’ Nelson v. Gatlin, 288 Ala. 151, 154, 258 So.2d 730, 733 (1972), overruled on other grounds by Standifer v. Pate, 291 Ala. 434, 436, 282 So.2d 261, 263 (1973). ‘One who enters the land of another, with the landowner’s consent, to bestow some material or commercial benefit upon the landowner is deemed an invitee of the landowner.’ Davidson v. Highlands United Methodist Church, 673 So.2d 765, 767 (Ala.Civ.App.1995). See also Restatement (Second) of Torts § 332 (1965):
“ ‘(1) An invitee is either a public invitee or a business visitor.
“ ‘(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
“ ‘(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirect *908 ly connected with business dealings of the possessor of the land.’
‘“On the other hand, a person who enters the land of another with the landowner’s consent or as the landowner’s guest, but without a business purpose, holds the legal status of a licensee.’ Davidson v. Highlands United, Methodist Church, 673 So.2d at 767. See also Restatement (Second) of Torts § 330 (1965) (stating that ‘[a] licensee is a person who is privileged to enter or remain on land only by virtue of the possessor’s consent’).”
Edwards v. Intergraph Servs. Co., 4 So.3d 495, 500-01 (Ala.Civ.App.2008).
In Walker v. Mitchell, 715 So.2d 791 (Ala.Civ.App.1997), this court reversed a summary judgment entered in favor of the Mitchells on Walker’s premises-liability claims. 715 So.2d at 792. In that case, Walker, the Mitchells’ adult daughter, had agreed to pick up Mrs. Mitchell at the Mitchells’ house and to transport her in a rented automobile to a wedding in Kentucky. Id. at 792-93. While Walker was transporting her mother’s bags to the automobile, she stepped in a hole in the Mitchells’ yard and fell, injuring herself. Id. at 793. This court noted that Walker’s deposition testimony, indicating that her purpose for coming onto the Mitchells’ premises was to pick up Mrs. Mitchell and transport her and her luggage to Kentucky at Mrs. Mitchell’s request, tended “to indicate a purpose that ‘materially benefited’ Mrs. Mitchell” and that Walker was thus an invitee rather than a licensee on the Mitchells’ premises. Id. This court determined that, based on that evidence presented by Walker, the question whether Walker was a licensee, as argued by the Mitchells, or an invitee could not be resolved in favor of the Mitchells at the summary-judgment stage. Id.
In the present case, Renee asserts that because she had babysat for Cade overnight and had taken Lexi to get chicken and ice cream to bring back to the family, she was an invitee. We disagree. In Walker, Walker presented evidence indicating that the sole purpose of Walker’s visit to the Mitchells’ premises was to pick up Mrs. Mitchell and to transport her to Kentucky at Mrs. Mitchell’s request. 715 So.2d at 793. In the present case, the evidence in support of and in opposition to the summary-judgment motion, viewed in a light most favorable to Renee, indicates that Renee had kept Cade overnight and then returned him to Brandon and Kimberly’s home. The visit to return Cade was completed once Renee left Brandon and Kimberly’s home, this time with Lexi, to pick up food. In other words, the material benefit bestowed upon Brandon and Kimberly, if any, by virtue of Renee’s babysitting Cade for a night was no longer the underlying purpose for which she last returned to Brandon and Kimberly’s house before the accident occurred.
Thus, we must decide whether Renee’s trip with Lexi to purchase food for Cade and Lexi would suffice to present a question of fact as to whether the purpose of Renee’s visit conferred a material benefit on Brandon and Kimberly such that Renee was an invitee rather than a licensee. We do not believe that it would. Renee stated in her deposition that she had purchased ice cream for Cade, Brandon, and Kimberly. Unlike in Walker, however, she did not present evidence indicating that she had done so at Brandon and Kimberly’s request. Also unlike in Walker, Renee was not injured in the course of fulfilling her asserted purpose. Rather, she stated in her deposition that, because a number of neighborhood children were present, there was not enough food for everyone and that the food was put away. Renee then participated in a social visit with her family in *909 Brandon and Kimberly’s backyard. Based on the evidence presented to the trial court in support of and in opposition to Brandon and Kimberly’s summary-judgment motion, we conclude that Renee did not present evidence indicating that she was an invitee rather than a licensee. To so hold would potentially allow any social visitor who brought food or gifts to the home of friends or family members without being asked to do so to achieve the status of an invitee. Such a holding would be in contravention of the established law in this state. See Morgan v. Kirkpatrick, 276 Ala. 7, 9, 158 So.2d 650, 652 (1963) (concluding that social guests are licensees). Thus, we conclude that Renee was properly a licensee on Brandon and Kimberly’s property.
We note that the duty owed to a licensee is not as great as that owed to an invitee. Although the court in Walker determined that the resolution of whether Walker was a licensee or an invitee was not properly resolved by a summary judgment, this court further stated that it “may nevertheless affirm the summary judgment in [the Mitchells’] favor if the Mitchells met their burden of demonstrating the absence of any genuine issue of material fact that they discharged their duty to Walker even assuming her status to be that of an invitee.” Id. at 793-94. Out of an abundance of caution, therefore, we will review the trial court’s summary judgment viewing Renee as an invitee.
In Walker, this court determined that, because the Mitchells had made no affirmative prima facie showing that they were not aware of the hole or that the hole was an open and obvious hazard of which Walker should have known, they had failed to show that there was no issue of material fact with regard to whether they violated a duty to Walker to keep their premises in a reasonably safe condition or to warn of unsafe conditions and, therefore, that the burden had not shifted to Walker to establish those matters by substantial evidence. Id. at 794.
In the present case, both Brandon and Kimberly testified that they did not know that, and that they had had no indication that, the swing was unsafe before the accident occurred. Indeed, Renee testified in her deposition that she did not believe that Brandon or Kimberly knew that there was anything wrong with the swing, that she did not believe that Brandon and Kimberly would have let their children sit on the swing if they had known there was a problem with the swing, that she and other family members had sat on the swing in the past, and that she thought the swing was fine to sit on based on her previous use and observation of the swing. We conclude, therefore, that unlike in Walker, Brandon and Kimberly made an affirmative prima facie showing that they were not aware of the defective condition of the swing. Therefore, the burden shifted to Renee to establish by substantial evidence that Brandon and Kimberly had violated a duty to her to keep their premises in a reasonably safe condition or to warn of unsafe conditions.
Renee asserts that she met that burden by presenting Brandon’s and Kimberly’s testimony that, “looking back,” they “should have” known that the swing was in bad shape or that they should have replaced the swing. Those assertions were based on their testimony that other structures in the backyard, including a wooden deck that had been replaced and a wooden sidewalk that needed to be replaced, were also rotten. It was undisputed, however, that those other structures were visibly rotten, whereas the swing did not appear rotten upon observation. Brandon, Kimberly, Renee, and Rodney each testified that their observation of the swing had not *910 raised any concerns about the soundness of its structure. Renee asserts that Brandon and Kimberly should have known that the swing was rotten, despite its appearance and prior use without incident, based on their knowledge of nearby structures that were visibly rotten and were, or had been, in disrepair, unlike the swing itself, which appeared to be in shape for its normal use and was so used for approximately seven years without incident, and based on their admissions after the accident that the swing should have been replaced or torn down. We conclude that that evidence is not “substantial evidence” sufficient to establish a genuine issue of material fact regarding Brandon’s and Kimberly’s potential knowledge of the condition of the swing, given the testimony that Brandon and Kimberly were not aware of the rotten condition of the swing and that the swing had been used by Renee and others without incident.
We therefore affirm the trial court’s summary judgment in favor of Brandon and Kimberly.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. Renee's husband, Rodney Freeman, had joined in the filing of the complaint as a plaintiff, asserting a claim of loss of consortium. The trial court dismissed Rodney as a plaintiff on March 22, 2010.

. We note that there were no evidentiary attachments to Renee’s opposition.